SHORE, SHIRLEY & CO., APPELLEE, *v.*
KELLEY ET AL., APPELLANTS.

(No. 52996—Decided
January 11, 1988.)

*Michael Shore,* for appellee.
*Elliott Ray Kelley,* for appellants.

DAVID T. MATIA, J. Defendants-appellants, Elliott Ray Kelley, Jesse Lewis and Mary Lewis, appeal from the judgment entered against them by the Cuyahoga County Court of Common Pleas on a jury verdict in the amount of $17,000 compensatory and $17,000 punitive damages in favor of appellee Shore, Shirley & Co. on its claim for malicious prosecution.

This matter had its genesis in a collection action against appellants and one Johnny E. Cooper, deceased, filed in the Shaker Heights Municipal Court on July 20, 1984. Therein, appellee[1] sought to recover from appellants and Cooper the sum of $2,432.82 for professional tax and accounting services rendered by a member of the accounting firm, Sidney Stromberg, deceased.

On October 9, 1984, by and through their counsel, appellant Elliott Ray Kelley, appellants Lewis and Cooper filed an answer and a counterclaim against appellee for $15,000,000.[2] Ap-

---

[1] Under the name of its predecessor in interest, Michael Shore & Co.

[2] In their answer, appellants recaptioned the case, naming as plaintiff "Michael Shore." The appellants' counterclaim in its entirety stated:

"1. Defendants for their counterclaim incorporates [*sic*] by reference the statements and allegations set forth herein above.

"2. Defendants aver they entered into a personal contract with Sid Stromberg to perform services personally and individually.

"3. That said Sid Stromberg did not

have the authority to transfer this personal contract to one Michael Shore, or anyone else.

"4. That the contract with Sid Stromberg involved investments from a medical consortium of approximately $600,000.00 and to establish a line of credit and limited partnership in excess of $2,000,000.00, along with sums of approximately $10,000,000.00 from an Arab investment concern in New York City. Said finances concerned the Spitzer Ford Building in East Cleveland, and a property in Beachwood, Ohio.

"5. By virtue of the interference of Michael Shore set forth herein and his failure to present documents entrusted to Sid Stromberg, defendants aver they have been damaged in the sum of $15,000,000.00.

"WHEREFORE, defendants demand judgment against plaintiff in the sum of $15,000,000.00 and costs herein."

pellants also filed a motion to transfer the case to common pleas court. On December 12, 1984, the municipal court held a hearing on appellants' motion to transfer and appellee's motion to strike appellants' answer and counterclaim. Although appellant Kelley failed to attend the hearing, the municipal court denied appellee's motion to strike and transferred the case to the common pleas court.

On July 17, 1985, the common pleas court pretried the matter. Appellant Kelley and his clients failed to attend. On July 25, 1985, the common pleas court granted appellee's motion to dismiss appellants' $15,000,000 counterclaim, dismissing with prejudice the counterclaim for failure to prosecute pursuant to Civ. R. 41(B)(1). Appellee's claim was referred to arbitration resulting in an award of $690 which subsequently was reduced to judgment.

On January 7, 1986, appellee filed the suit which is the subject of this appeal, alleging that appellants' counterclaim in the collection action was "a sham pleading requesting $15,000,000 in damages * * * without advancing any intelligible theory of recovery." The complaint alleged that appellants' counterclaim had been filed "with malice and without probable cause," resulted in the cancellation of appellee's malpractice insurance, and inflicted damages upon appellee in the form of increased malpractice premiums, lost professional time, legal fees, injury to the reputation of the firm, and mental suffering and anxiety of the principals of the firm.

At trial on October 28, 1986, appellee called as its first witness one of its principals, Michael Shore. Shore explained the circumstances leading to the filing of appellee's collection action against appellants and related the consequences of appellants' counterclaim. Appellee lost professional time worth approximately $1,600 in defending against appellants' counterclaim. Shore stated that appellee had never before been sued for professional malpractice. Appellee reported the counterclaim to its malpractice insurance carrier in accordance with the terms of the policy which provided one million dollars coverage for an annual premium of $1,691. Appellee's malpractice policy deductible exceeded the $1,371 in legal fees incurred in defending against the counterclaim. Finally, on November 8, 1985, appellee's carrier cancelled the policy. The best policy appellee thereafter was able to procure supplied only $500,000 in coverage for an annual premium of $7,846.65. Shore, who is an attorney as well as an accountant, stated that he believed Kelley bore malice against him because as acting judge of the Shaker Heights Municipal Court, Shore had contacted appellant Kelley regarding his non-attendance at a motion hearing and threatened consequences for continued inaction in that case.

Appellee called appellant Jesse Lewis as if upon cross-examination and questioned him regarding his calculation of the $15,000,000 in damages sought in appellants' counterclaim in the collection case. Appellee introduced the deposition testimony of Jesse Lewis wherein Lewis claimed to have a master's degree in civil engineering from Case Western Reserve University.[3] Appellee then called the University Registrar of Case Western Reserve University who testified that an examination of the records of the university did not reveal a Jesse Stinson Lewis as ever having been a student at CWRU.

Appellee called appellant Mary

---

[3] Appellant Lewis claimed that he carried a grade point average of "98.6."

Lewis who testified as to her involvement in the filing of the $15,000,000 counterclaim. Appellant Kelley thereafter was called and testified that he considered the $15,000,000 counterclaim to be reasonable and legitimate.

Appellee's final witness was Marian L. Muse who testified that Jesse Lewis had led her to believe he was an attorney, that she had been taken by Lewis to appellant Kelley with regard to a bankruptcy matter, and that she had paid legal fees to Lewis with four checks that were variously endorsed by appellants Jesse Lewis, Mary Lewis, and Elliott Ray Kelley.

At the close of the appellee's case, appellants moved to dismiss the case for lack of proof that appellee's malpractice premium was increased as a direct result of appellants' counterclaim. The court denied the motion on the basis that the jury could infer that the cancellation of appellee's malpractice insurance and the increase in premiums for a new policy were proximately caused by the filing of appellants' counterclaim.

Appellants presented the testimony of one Charles Morrow and appellant Kelley in defense of appellants' case. Morrow's occupation was not elicited with precision, but he related that he had been doing business "consulting as an independent person."[4] Morrow stated that he was approached by appellant Jesse Lewis to assist a certain "Union Brokers and Management Company"[5] in the acquisition of a Spitzer Ford Building to be converted into a truck stop. Morrow testified that Union Brokers and Management Company had been incorporated by Johnny Cooper and appellant Jesse Lewis, that the company spent $2,133.44 to hold a seminar designed to induce physicians immediately to invest in the company's project, that $1,000 had been deposited toward the purchase of the Spitzer Ford Building, that a total of $21,000 had been raised and spent, that obtaining financing was ninety-five percent certain, and that the failure of Sidney Stromberg to do certain unspecified work was "all it took" to kill the project.

Appellant Elliott Ray Kelley testified that the truck stop venture was viable and that the personal services of Sidney Stromberg were contracted for. In response to a question from the bench, appellant Kelley admitted that appellants knew Stromberg was working in the same office as appellee Shore.

The trial court instructed the jury on the law of malicious prosecution, stating as one of its elements that injury or damage must have been suffered as a result of the action or prosecution in question. The jury returned a verdict of $17,000 compensatory and $17,000 punitive damages against the three appellants. Appellants' motions for judgment notwithstanding the verdict, for a new trial and for relief from judgment were denied. Appellants timely appealed.

I

Assignments of Error Nos. I, II and VI

Three of appellants' assignments of error address the elemental components of a cause of action for malicious prosecution[6] and will be considered simultaneously:

---

[4] Certain exhibits indicate that Morrow was the chief executive officer of "Butterfield Marketing Company."

[5] Certain exhibits indicate that the name of the entity was "Union Brokers Investment and Management Company, Inc."

[6] Appellee has also argued abuse of process in its appellate brief, but the jury was not instructed on that theory of recovery. Hence, that theory of recovery will not be considered.

"I. The trial court erred in overruling defendants [*sic*] motion for a directed verdict in favor of defendants at the close of plaintiffs [*sic*] case."

"II. The trial court erred in not ruling plaintiffs [*sic*] case failed as a matter of law inasmuch as he [*sic*] offered no evidence that he [*sic*] has actually sustained any damage that was the result of malice or want of probable cause."

"VI. The trial court erred in failing to grant appellants' motion for judgment n.o.v. for the reason that the judgment rendered thereon are [*sic*] not sustained by the weight of the evidence."

Although appellee argues in part that appellants' motion for a directed verdict properly was denied due to appellants' failure to advance specific grounds in support,[7] the record reveals that appellants argued lack of malice and a failure of proof that the cancellation of appellee's malpractice insurance was proximately caused by appellants' counterclaim in appellee's collection action against them. In support of their second and sixth assignments of error, appellants add the argument that appellee's property was not so seized as a result of appellants' counterclaim as to support a claim for malicious prosecution.

A favorable ruling on either a motion for directed verdict or a motion for judgment notwithstanding the verdict is not easily obtained. *Osler* v. *Lorain* (1986), 28 Ohio St. 3d 345, 347, 28 OBR 410, 412, 504 N.E. 2d 19, 21.

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions. *McNees* v. *Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269; *Ayers* v. *Woodard* (1957), 166 Ohio St. 138; Civ. R. 50(A) and (B)." *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275, 74 O.O. 2d 427, 430, 344 N.E. 2d 334, 338.

Review of the trial court's denial of appellants' motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of an action in tort for malicious prosecution. A prima facie case of malicious prosecution includes proof of malice in the institution of a legal proceeding, lack of probable cause for the proceeding and the termination of the proceeding in favor of the claimant. *Clermont Environmental Reclamation Co.* v. *Hancock* (1984), 16 Ohio App. 3d 9, 11, 16 OBR 9, 11-12, 474 N.E. 2d 357,

---

[7] Civ. R. 50(A) provides in pertinent part that:

"(3) Grounds. A motion for a directed verdict shall state the specific grounds therefor.

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

361-362. Similarly, a prima facie case of malicious prosecution against an attorney includes proof that: (a) the attorney acted maliciously or knew beyond any reasonable doubt that his clients were motivated solely by malice in bringing proceedings against the plaintiff; (b) the attorney did not have a good faith basis for believing that the action was warranted under existing law or supportable by a good faith argument for the extension, modification or reversal of current law; and (c) termination of the proceeding in the claimant's favor. *Woyczynski* v. *Wolf* (1983), 11 Ohio App. 3d 226, 11 OBR 350, 464 N.E. 2d 612. Furthermore, Ohio law imposes upon a claimant seeking to establish a prima facie case of malicious prosecution against a layman or an attorney proof of the additional element of seizure of the claimant's person or property during the course of the earlier proceeding. *Cincinnati Daily Tribune Co.* v. *Bruck* (1900), 61 Ohio St. 489, 56 N.E. 198, paragraph one of the syllabus. *Clermont Environmental Reclamation Co.* v. *Hancock, supra; Woyczynski* v. *Wolf supra; Crawford* v. *Euclid Natl. Bank* (1985), 19 Ohio St. 3d 135, 19 OBR 341, 483 N.E. 2d 1168.

A thorough review of the facts of this case, as discernible from the record and as related by appellee in its brief,[8] compels the conclusion that the court below did not err in denying appellants' motions for directed verdict and for judgment notwithstanding the verdict, or in declining to rule as a matter of law that appellee had not suffered damages as a result of appellants' malice and lack of probable cause in filing their $15,000,000 counterclaim. Construing the evidence most strongly in favor of the appellee, the trial judge correctly determined that appellee had made out a prima facie case of damages and had adduced evidence sufficient to permit reasonable minds to conclude that appellants acted with actual malice, with malice implied at law, and without probable cause in filing their $15,000,000 counterclaim.

The grounds proposed by appellants in support of their motion for directed verdict were exceedingly narrow. Construing the evidence most strongly in favor of appellee, the trial judge correctly concluded that the jury, in the exercise of its common sense, reasonably could infer that appellants' counterclaim proximately caused the cancellation of appellee's malpractice insurance. Moreover, appellants conceded that appellee had suffered other damages such as the incurring of attorney fees. Appellants did not argue on their motion for directed verdict that increased malpractice premiums and legal defense fees do not constitute a "seizure of property."[9] Appellants did not object to the trial court's instruction to the jury which in essence substituted an element of "special damage" for the element of seizure of property and, hence, waived any error in this regard.

The jury reasonably could conclude that appellants' purported business venture was a mere scheme with as little chance of success as their counterclaim itself. The evidence, construed most strongly in favor of the appellee, would support the inference that the counterclaim had no legitimate basis in fact or at law, but was at best a vex-

---

[8] Appellants' brief omits both a statement of the case and a statement of facts and thus is not in full conformity with the Appellate Rules.

[9] For a contrary outcome where this argument timely was raised via motion for summary judgment, see *Moss* v. *Blake* (Mar. 4, 1982), Cuyahoga App. No. 43799, unreported.

atious ruse designed to avoid payment of a legitimate debt. The evidence establishes no effort whatsoever on the part of the appellants to prosecute their counterclaim. Indeed, the record reveals that the appellants cavalierly refrained from even participating in the legal proceeding they had initiated evidencing wanton disregard for the rights of the appellee. Finally, the ultimate disposition of appellants' counterclaim in appellee's favor was uncontested.

Appellants' first, second and sixth assignments of error are without merit.

## II

### Assignment of Error No. III

Appellants' third assignment of error is that:

"III. The court erred in not excluding defendant Mary Lewis from the judgment entirely; either defendant Kelley or Jesse Lewis should be excluded from judgment."

Appellants' argument with regard to appellant Mary Lewis is based on her testimony that she did not know about the $15,000,000 counterclaim, but let her husband Jesse Lewis take care of her business. Appellants' argument that either appellant Kelley or appellant Jesse Lewis should be excluded from the verdict apparently proceeds from the premise that an attorney vigorously representing a client either improperly advises a client to pursue litigation when probable cause does not exist or innocently prosecutes litigation based on misrepresentations by the client that probable cause does in fact exist.

The verdict below is entitled to considerable deference upon review.

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578, syllabus. See, also, *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 10 OBR 408, 411-412, 461 N.E. 2d 1273, 1276.

"[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus.

The record in this case contains competent credible evidence to support a reasonable conclusion that the appellants mutually participated in the Union Brokers and Management Company venture, in the counterclaim filed against appellee in appellee's collection action against appellants, and in the defense of the instant action. Appellant Mary Lewis was a named party in both the counterclaim in the collection action and the answer and defense of this case. No effort was ever made to exclude her from either action. She was an officer of Union Brokers and Management Company. She co-endorsed checks for legal fees paid to a non-attorney, appellant Jesse Lewis. It was within the discretion of the jury as trier of fact to assess the credibility of appellant Mary Lewis and accordingly to include or exclude her from their verdict.

The court rejects appellants' argument that either appellant Kelley or appellant Lewis should be excluded from the verdict. No logical inconsistency would preclude a jury from finding that a client had no probable cause to pursue vexatious litigation and that the client's attorney realized that no probable cause existed. Competent, credible evidence appears in the record to support just such a conclusion in the instant case.

Appellants' third assignment of error is without merit.

## III

### Assignment of Error No. IV

"IV. The award for damages was based on passion and prejudice caused by improper argument by counsel for appellee."

Appellants argue that the jury's award of damages was the result of passion and prejudice incited by improper argument of counsel for appellee. Specifically, appellants now object to an isolated reference to appellant Jesse Lewis as a "good salesman, con man, salesman, whatever" and to appellee's counsel's argument that appellants worked together for many years and had victimized Marion Muse and perhaps others.

Appellants raised no objection to the alleged misconduct of appellee's counsel, thereby again waiving any such error. Mahone v. Steinweiler (Oct. 1, 1987), Cuyahoga App. No. 52810, unreported. The court finds that counsel for appellee did not so exceed the wide latitude afforded counsel in closing arguments as to require the trial court's intervention to avoid plain error.

Appellants' fourth assignment of error is without merit.

## IV

### Assignment of Error No. V

Appellants' fifth assignment of error is that:

"V. The award of punitive damages was excessive and disproportionate to the actual damages awarded."

Appellants' abbreviated argument does not address the content of this assignment of error. Rather, appellants repeat their contention that actual malice was not proven at trial.

Punitive damages may be considered and awarded by a jury only in the event that the jury finds in favor of a party and awards that party compensatory damages. Plavcan v. Longo (July 3, 1980), Cuyahoga App. No. 39964, unreported. The jury in the instant case found for appellee and awarded $17,000 compensatory damages.

This court has cogently reasoned that:

"Actual malice may be inferred, for it is 'rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances.' Davis v. Tunison (1959), 168 Ohio St. 471, 475. * * *

"Conduct marked by a sufficient and reckless disregard for the consequences can constitute inferrible malice. Steinbeck v. Philip Stenger Sons (1975), 46 Ohio App. 2d 22, 32; Kimble v. Universal TV Rental (1980), 19 Ohio Ops. 3d 172, 179. The court's charge on malice was correct * * * and there were no objections to the charge." Perry v. Villa Realty Co. (Nov. 12, 1981), Cuyahoga App. No. 43452, unreported, at 5.

Competent, credible evidence appears in the record of this case to support submission to the jury of the issue of punitive damages. Legal malice was evidenced by the absence of probable cause and of a good faith basis in law for the filing of appellants' counterclaim. Actual malice reasonably could be inferred by the jury from the complete failure of appellants to prosecute their counterclaim.

An award of punitive damages is within the prerogative of the jury and will not be overturned unless it bears no rational relationship or is grossly disproportionate to the actual damages awarded. Clark v. Totten (Apr. 24, 1986), Cuyahoga App. Nos. 50535 and 50536, unreported (jury award of $1 compensatory and $8,000 punitive damages for assault affirmed). It is the opinion of this court that the jury's award of $17,000 punitive damages is reasonably related to its award of

$17,000 compensatory damages and was justified under the circumstances of this case.

Appellants' fifth assignment of error is without merit.

*Judgment affirmed.*

KRUPANSKY, J., concurs.

NAHRA, C.J., dissents.

NAHRA, C.J., dissenting. However outrageous the filing of the counterclaim was in this case, the element of seizure of property was not present. I would find this to be plain error and reverse, rather than affirm based on appellants' failure to object to the court's charge. The plain error doctrine is applicable to civil cases. *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 18 OBR 281, 480 N.E. 2d 802.