JOURNAL ENTRY AND OPINION
Defendants-appellants Wagner Management, d.b.a. Berea Lake Apartments, and Mrs. Marian Wagner (the owner of Wagner Management, Inc.) appeal from the bench trial decision of premises liability in favor of plaintiff-appellee Alice R. Hovanec (Hovanec). For the reasons adduced below, we affirm.
A review of the record on appeal indicates that on Sunday, June 13, 1993, Hovanec (d.o.b. November 20, 1975) had been a tenant of Berea Lake Apartments located on Coe Road in Berea, Ohio, for approximately six months.[1] On that date, between 9:30 to 10:00 p.m., Hovanec went outside to deposit some trash into a garbage dumpster located in the parking lot adjacent to the building. After depositing the trash into the receptacle, a German Shepard-type dog appeared from behind the dumpster and barked and growled at her. Hovanec panicked and ran back toward the entrance to the building from which she had just exited. The entrance consisted of a glass door which opened toward the exterior, and a fixed glass panel window beside the door adjacent to the handle. The door and window were framed in aluminum. Upon reaching the door, Hovanec pulled open the door using the handle which was located on the edge of the door approximately four feet up from the threshold. She opened the door slightly and squeezed through. As she squeezed through, Hovanec turned her body and, in doing so, her right shoulder struck the fixed glass panel window. The window, which was not made of tempered glass or laminated safety glass, shattered and Hovanec fell through the window, sustaining serious lacerations to her right arm and leg and assorted puncture wounds, requiring approximately 300 surgical stitches to repair.
The Complaint was filed on June 12, 1995, without a jury demand. The parties were ordered to submit their witness lists by the time of the final pretrial. The bench trial commenced on February 24, 1999. At the trial, the defense did not put on a case-in-chief. The trial court issued its findings of fact and conclusions of law on April 15, 1999, stating in pertinent part the following:
 FACTS OF THE CASE * * * Plaintiff produced the testimony of a glass installer by the name of Louis Baudo who owns Tuxedo Glass and has been involved in glazing since 1971 and has owned Tuxedo Glass since 1985.
 As a part of his testimony, Plaintiff's Exhibit #1, a videotape of the doorway, was introduced. It indicated that the bottom stop is still, as of today's date, missing and one of the other stops is loose. He testified that the large shards of glass that caused her injury, would not have occurred had there been safety glass installed. He further indicated that most local ordinances required safety glass since the middle 70's. However, the existing glass was covered through grandfather clauses, so that the mere fact of having plate glass in the lieu of safety glass in itself is not negligence per se.
 He further indicated that when he observed the conditions upon his more recent inspection, the missing stops would have caused weakness in the glass and would have allowed it to bend in ways other than for which it was designed.
 * * * CONCLUSIONS OF LAW Court finds that the Plaintiff (sic) was negligent in the maintenance of the building and that by allowing stops to be missing or loose, would allow the glass to bend in ways for which it was not designed and hence, shatter. Furthermore, the door pivot being somewhat more difficult, could cause somebody to be thrown off balance when they had to open the door in an emergency or a perceived emergency.
 However, the Court further notes that the reaction of the Plaintiff to the dog was perhaps a (sic) more than one would otherwise observe in an adult. Further, while running from a dog may be appropriate conduct, it contributed to injuries as she could not safely stop without hitting the glass and its metal support. This Court finds total damages in the amount of $150,000.00 but finds the Plaintiff to be contributory (sic) negligent in the amount of 20% and discounts the award to $120,000.00 plus costs herein. IT IS SO ORDERED. (Italicization added.)
 * * *
See Journal Vol. 2329, pages 575-577.
Appellants' appeal presents seven assignments of error. These assignments will be addressed out of the order presented by appellants in order to facilitate review.
The fourth assignment of error provides:
 IV THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN ALLOWING PLAINTIFF TO ELICIT EXPERT TESTIMONY FROM A SURPRISE WITNESS ON A CRITICAL ISSUE, WHERE PLAINTIFF NEVER FURNISHED AN EXPERT REPORT OR EVEN IDENTIFIED THE WITNESS PRIOR TO TRIAL AND THE TESTIMONY WAS NOT BASED UPON PROBABILITY, BUT ONLY POSSIBILITIES THAT WERE CONTRARY TO THE ACTUAL EVIDENCE.
At trial, Mr. Lewis Baudo (Baudo), a professional glazer employed by Tuxedo Glass Company, testified on behalf of the plaintiff. See Tr. 74-94. At the commencement of his testimony, the defense objected on the basis that the witness had not been identified as a potential witness, expert or otherwise, prior to trial. However, the defense did not object to permitting the witness to testify in a limited manner as a fact witness to explain technical workings of the window system in issue. Baudo testified to the following without objection by the defense (see Tr. 74-81): (1) that he had been a glazer since 1971 and had owned Tuxedo Glass Company since 1985; (2) he examined the entrance way at issue two days prior to his testimony; (3) he viewed a videotape at trial which was prepared by plaintiff's counsel and identified as Plaintiff's Exhibit 1 which depicted what he observed at the time of his inspection in 1999; (4) he described the window system as a tube and stop system, in which the stops are metallic channels which are secured to the perimeter of the window unit using clips so as to hold the glass in the frame; (5) at the time of his inspection, the stops were partially missing or partially loose; (6) when he exerted pressure on one of the loose stops with his fingernail, the stop popped out of its position; (7) a properly installed stop is normally removed through the use of a pry bar or tool of some type; (8) loose stops indicate that the clips are defective or not secured properly, or the door is in bad repair which causes a person to pull on it excessively which in turn loosens the stops.
The defense objected to the scope of Baudo's testimony when counsel for plaintiff inquired as to the life expectancy of the window system employed at the apartment building. (Tr. 81-83.) The basis of the objection was that Baudo had not been identified as an expert witness. The court agreed with the defense, sustained the objection, and permitted counsel to continue questioning but limited to non-expert factual issues. (Tr. 83.) Baudo continued, testifying to the following: (9) missing or loose stops weakens the integrity of the window unit and creates a potentially dangerous situation because the pane of glass can come free of the frame and hit someone (Tr. 86); (10) missing or loose stops can also cause the glass pane to crack while in the frame if someone leans or bumps up against it; (11) at the time of his inspection in 1999, the entrance way window had a missing stop; (12) in a properly installed window unit, the window will not move in the frame but the pane will flex (Tr. 89, 90); (13) irrespective of the integrity of the frame, sufficient force applied to the pane in the form of someone running into the pane with enough force that they actually fall through it, will break the pane (Tr. 89-90); (14) the quarter-inch-thick glass at issue weighs approximately three pounds per square foot and it takes a big force to shatter the pane of a properly installed window, and he would not expect the pane to break if a girl the size of plaintiff bumped the glass if the glass were installed properly (Tr. 91-92); (15) missing or loose stops makes the situation more hazardous (Tr. 94).
Apart from the testimony dealing with the life expectancy of the window unit, the defense voiced no objection to the remaining testimony and no motion to strike such testimony is evident from the record. Accordingly, alleged error pertaining to this remaining testimony is waived for appellate purposes. Evid.R. 103(A)(1).
The fourth assignment of error is overruled.
The first and third assignments of error, which will be discussed jointly because they have a common standard of review involving manifest weight of the evidence, provide:
 I THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN DENYING DEFENDANT'S MOTION FOR DISMISSAL AT THE CLOSE OF PLAINTIFF'S CASE.
 III THE TRIAL COURT'S FINDING THAT DEFENDANTS WERE LIABLE FOR PLAINTIFF'S ACCIDENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In the first assignment, appellants argues that dismissal at the close of plaintiff's case was warranted pursuant to Civ.R. 41(B)(2) on the basis that no right to relief was shown. The second assignment is a straight forward manifest weight of the evidence argument. In short, appellants argue that the evidence did not support plaintiff's version of causation, to-wit, that loose or missing window stops contributed to the shattering of the window pane when the force of plaintiff's body was placed against it.
 The record reflects that did, in fact, move for involuntary dismissal pursuant tat the close of Civ.R. 41(B)(2).[2] No reasons or argument accompanied this motion and the trial court simply denied the motion without elucidation.
The standard of review for a Civ.R. 41(B)(2) ruling is as follows:
 In a trial to a court without a jury, a motion for judgment by a defendant at the close of plaintiff's case is one for dismissal, pursuant to Civ.R. 41(B)(2) and not for a directed verdict, pursuant to Civ.R. 50(A)(4). The distinction is critical because there are two different tests to be utilized by the court. Pursuant to Civ.R. 41(B)(2), the trial court is the trier of fact and is to weigh the evidence. A dismissal pursuant to Civ.R. 41(B)(2) will not be set aside unless it is incorrect as a matter of law or is against the manifest weight of the evidence.
Johnson v. Tansky Sawmill Toyota, Inc. (1994), 95 Ohio App.3d 164,167.
In reviewing a manifest weight of the evidence argument, we note that a judgment supported by some competent, credible evidence going to the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. Since the trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Shore, Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10.
In the case sub judice, there was ample competent and credible evidence to suggest that the components of the window at issue were not properly maintained and that this poor maintenance caused the window pane to bend in an unintended manner upon the application of force by plaintiff, shattering in the process and causing the injuries to plaintiff.
The first and third assignments of error are overruled.
The second assignment of error provides:
 II THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF A LAW IN DENYING DEFENDANT'S (SIC) MOTION FOR SUMMARY JUDGMENT.
The defendants' motion for summary judgment was premised on the theory that the defendants had no knowledge or prior notice of the window at the entranceway representing a hazardous condition.
In the Complaint, at paragraph 7, it was alleged that [S]aid entranceway was in a hazardous condition due to the existence of non-protective glass and disrepair in the framing. Said glass although being in the entranceway, was not marked with warning stickers or tape. The glass was also not protective (sic) By any safety bar. The Complaint, at paragraph 12, alleged that [D]efendants breached their duty to use reasonable care to protect Plaintiff Hovanec from hazardous conditions on the premises by its failure to inspect for such conditions and/or to repair such conditions and/or to institute protective measures and warnings.
The Answer, at paragraph 12, stated, [A]dmit the allegations of Paragraph 7 with respect to the specific condition of the area in question but deny that it was hazardous or unreasonably dangerous. Thus, it was admitted that the framing of the window unit was in disrepair.
These pleadings raise a genuine issue of fact as to whether the window unit was in disrepair, the extent of defendants' knowledge of the condition, and whether the entranceway was hazardous. Accordingly, the trial court, viewing the evidence in a light most favorable to the non-moving party, properly determined that summary judgment was not warranted prior to the trial. Civ.R. 56.
The second assignment of error is overruled.
The fifth assignment of error provides:
 V THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW IN AWARDING DAMAGES ON SPECULATIVE CLAIMS FOR WHICH PLAINTIFF OFFERED NO COMPETENT EVIDENCE.
 VI THE AWARD OF $150,000 IN DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In addressing these assignments we are mindful that "[T]he determination of damages [is] a question for the jury and the court of appeals [is] not at liberty to substitute its judgment for that of the finder of fact." Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 655. Where the verdict of the finder of fact is supported by competent, credible evidence, it is not against the manifest weight of the evidence. Seeley v. Rahe (1985), 16 Ohio St.3d 25,26, 475 N.E.2d 1271.
In the case sub judice, there was evidence that Hovanec's injuries required approximately three hundred (300) sutures to repair the extensive lacerations incurred in the accident. (Tr. 102.) Undeniably, common sense mandates that this large number of sutures is indicative of a significant amount of pain caused by the accident. She testified that there was permanent damage to her tendons in her hand, limiting the mobility of her fingers and making repetitive-type motions, to this day, difficult and tiring. (Tr. 105-106.) The hand also continues to experience pain and stiffness. (Tr. 107.) There was testimony that she had been employed at various times as a professional model and that the injuries would hamper her employment in that field in the future due to the scarring caused by her injuries. (Tr. 99, 108-109.) Hovanec testified as to the several month rehabilitation period and the lasting lifestyle limitations the injuries to her right hand have caused. Her medical expenses were $10,119.63. See Plaintiff's Exhibit 25.
Given the competent and credible evidence regarding proximately caused damages, we cannot conclude that the compensatory damage awarded in this case was error and against the manifest weight of the evidence.
The fifth and sixth assignments of error are overruled.
The seventh, and final, assignment of error provides:
 VII THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AS A MATTER OF LAW BY ABUSING ITS DISCRETION IN DENYING DEFENDANTS LEAVE TO REQUEST A JURY TRIAL.
The record indicates that defendants, on September 24, 1998, filed a motion seeking leave to make a jury demand. The reasons for seeking this leave were that: (1) defense counsel had only recently noticed that the Complaint did not contain a jury demand; and, (2) that the action involved a claim for personal injuries which is best suited for a jury trial. No explanation or further reasoning was suggested for the second allegation. Plaintiff filed a brief in opposition to the leave motion on November 3, 1998, arguing that leave should not be granted for the following reasons: (1) the parties had stipulated the medical condition of the plaintiff; (2) the facts of the case were known to the court through the dispositive motions filed in the action; (3) the trial date was scheduled in the near future (bench trial set for November 16, 1998) and to present evidence to a jury would require live or videotaped medical testimony which was not contemplated; (4) plaintiff had previously waived the taking of the deposition of Mr. Wagner because he was terminally ill. The trial court denied the leave motion on November 13, 1998, without opinion using a half-sheet status form entry.
Civ.R. 39(B) provides that issues not demanded for trial be tried to the bench. This rule further provides that notwithstanding this restriction, the court in its discretion upon motion may order a trial by jury of any or all issues. In the case sub judice, we cannot conclude that the trial court abused its discretion in denying defendants a jury trial at such a late date. The motion for leave was made over three years after the Answer had been filed on July 18, 1995. See Civ.R. 38(B) (any party may demand a jury trial at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue.). Discovery had been completed and the matter was to be heard at trial approximately seven weeks after the motion for leave was filed. Were a jury trial ordered at that late date, discovery would have to be reopened and the trial date continued.
The seventh assignment of error is overruled.
It is ordered that appellee recover of appellants her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
 _______________________ JAMES D. SWEENEY, J.
KENNETH A. ROCCO, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
[1]The apartment building was built in 1963. Hovanec, who graduated from Berea High School in June of 1994, was five-feet-five-inches tall and weighed approximately 115 pounds at the time of the accident.
[2] The record indicates that when this motion was made to the trial court, defense counsel misidentified the motion as having been made pursuant to Civ.R. 41(A). This civil rule, 41(A), does not apply because it involves voluntary dismissals.