OPINION
{¶ 1} Janelle M. Pauer, appeals from the judgment of the Geauga County Court of Common Pleas, entered following a bench trial, on Betty B. Langaa and Kurt T. Liedtke's claims for fraudulent conveyance and foreclosure. We affirm.
 {¶ 2} In 2001, Jean Pauer, Janelle's mother, filed an action in the Cuyahoga Court of Common Pleas against Langaa and Liedtke for trespass. Langaa filed a counterclaim seeking sanctions and attorney fees for Pauer's alleged frivolous litigation. The Cuyahoga County Court of Common Pleas entered summary judgment in favor of Langaa and Liedtke on Pauer's claims. On August 2, 2002, the Cuyahoga County Court of Common Pleas awarded Langaa sanctions of $26,562.19 plus interest. The court awarded Liedtke $587.08. Langaa and Liedtke filed certificates of judgment liens in these amounts with the Cuyahoga County Clerk of Court and established judgment liens. Those judgment liens were then transferred to the Geauga County Clerk of Courts.
 {¶ 3} On March 10, 2003, Langaa filed the instant action for rescission of fraudulent conveyances and foreclosure in the Geauga County Court of Common Pleas. Janelle was named a defendant because Jean Pauer's real estate had purportedly been conveyed to Janelle. Langaa's action sought to rescind conveyances of the real estate to Janelle, and to foreclose on that real estate to satisfy Langaa's judgment. Liedtke filed a cross-claim alleging the same causes of action.
 {¶ 4} In the meanwhile, Jean Pauer prosecuted an appeal to the Eighth District Court of Appeals. On April 22, 2004, that court vacated a portion of the sanction award in favor of Langaa, but otherwise affirmed the trial court's judgment. Pauer v. Langaa, 8th Dist. No. 83232,2004-Ohio-2019, ¶ 14-15.
 {¶ 5} After the Eighth District rendered its judgment, Langaa moved the Geauga County Court of Common Pleas to amend her pleadings to reflect the lesser amount due. The trial court granted Langaa's motion and the matter proceeded to a bench trial. The trial court found in favor of Langaa and Liedtke on their claims for fraudulent conveyance and ordered rescission of the conveyance and foreclosure of the property. Janelle appeals from the trial court's judgment raising two assignments of error:
 {¶ 6} "[1.] The trial court erred to the prejudice of the defendant-appellant by denying her motion to dismiss."
 {¶ 7} "[2.] The trial court's decision was against the manifest weight of the evidence."
 {¶ 8} In her first assignment of error, Janelle argues the trial court erred when it failed to dismiss appellees' claims because Langaa and Liedtke failed to obtain new judgment liens or certificates of judgment liens reflecting the decrease in the amount of sanctions as ordered by the Eighth District Court of Appeals. In essence, Janelle argues the trial court issued its judgment of foreclosure based on a judgment that was void ab initio. We disagree.
 {¶ 9} In its decision on Pauer's appeal, the Eighth District vacated only a portion of the sanctions. Pauer, supra, at ¶ 14. The court stated:
 {¶ 10} "After a review of the record, including the attorney's fee bill and the court docket, we find that the award of sanctions should be reduced by $5,445. We determined that 35.3 hours in attorney's fees and $150 in filing fees related to the Geauga case; thus the judgment is voidonly as to those fees." (Emphasis added.) Id.
 {¶ 11} Because only a portion of the award was vacated, the judgment was still valid, and thus the certificates of judgment lien were likewise valid.
 {¶ 12} Janelle cites Merrill Lynch, Pierce, Fenner, Smith, Inc. v.Stark (1991), 75 Ohio App.3d 611 in support of her argument; however, in that case this court found that another appellate court had vacated the entire judgment for attorney fees and remanded the matter to the trial court for a new determination. Id. at 614-615. Here, the award was not vacated in its entirety, but only modified; thus, the underlying judgment remained valid, albeit at a lesser amount. This discrepancy was corrected when the trial court granted Langaa's motion to amend her pleadings to reflect the lesser amount.
 {¶ 13} Appellant's first assignment of error is without merit.
 {¶ 14} In her second assignment of error, appellant argues the trial court's judgments finding the conveyances to her to be fraudulent were against the manifest weight of the evidence.
 {¶ 15} The evidence established Jean Pauer made the following conveyances of her property:
 {¶ 16} On January 4, 2002, Jean Pauer conveyed the property to the JJJ Pauer Revocable trust, a trust that did not exist, and of which Jean Pauer was purported to be the trustee.
 {¶ 17} On May 30, 2002, Jean Pauer, as trustee, conveyed the property to the JM Pauer Revocable Trust. Janelle was the sole trustee of this trust. Again, this trust did not exist.
 {¶ 18} On November 8, 2002, Janelle, as trustee, conveyed the property to Jean Pauer as trustee of the JJJ Pauer Revocable Trust (that still did not exist.) Jean Pauer, as trustee, conveyed the property to herself individually. Jean Pauer then conveyed the property to Janelle individually.
 {¶ 19} No consideration was paid in any of these transactions.
 {¶ 20} We will not reverse a judgment that is supported by some competent, credible evidence going to the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, at syllabus. The trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of their testimony; therefore, we presume that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Shore, Shirley Co. v. Kelley (1988),40 Ohio App.3d 10, 15.
 {¶ 21} R.C. 1336.04 provides:
 {¶ 22} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
 {¶ 23} "(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;
 {¶ 24} "(2) * * *
 {¶ 25} "(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
 {¶ 26} "(1) Whether the transfer or obligation was to an insider;
 {¶ 27} "(2) Whether the debtor retained possession or control of the property transferred after the transfer;
 {¶ 28} "(3) Whether the transfer or obligation was disclosed or concealed;
 {¶ 29} "(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
 {¶ 30} "(5) Whether the transfer was of substantially all of the assets of the debtor;
 {¶ 31} "(6) Whether the debtor absconded;
 {¶ 32} "(7) Whether the debtor removed or concealed assets;
 {¶ 33} "(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
 {¶ 34} "(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
 {¶ 35} "(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
 {¶ 36} "(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."
 {¶ 37} Janelle first argues there was no evidence to establish Jean Pauer was insolvent at the time of the transfers. We disagree.
 {¶ 38} R.C. 1336.02(A)(1) provides, "A debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation." Here, Langaa and Liedtke presented evidence to establish Jean Pauer's only assets at the time of the transfer were the real estate in question and a used van, valued optimistically by Jean Pauer at approximately $9,000. The transfer of the real estate rendered Jean Pauer insolvent as to Langaa and Liedtke's claims.
 {¶ 39} Janellee next argues that the fact the property was transferred to an "insider" does not prove intent to defraud. We might agree were this the only badge of fraud established by Langaa and Liedtke, but as we discuss below, Langaa and Liedtke established seven of the ten relevant badges of fraud.
 {¶ 40} Janelle next argues Langaa and Liedtke failed to establish Jean Pauer retained possession or control of the property.
 {¶ 41} There is no dispute that Jean Pauer continued to live in the house following the conveyances at issue. This alone establishes possession.
 {¶ 42} Janelle argues the evidence established she had legal ownership of the property (hence the need for her to transfer the property during the transactions on November 8, 2002) and made significant improvements to the property. As to the former, this proves nothing other than that the property was conveyed (a prerequisite in a claim for fraudulent conveyance.) As to the latter, this argument does not negate the evidence establishing Jean Pauer was in possession of the property.
 {¶ 43} Janelle next argues Langaa and Liedtke failed to obtain a judgment based on their counterclaims in the Cuyahoga County case, but only obtained an award for sanction. Thus, she argues R.C. 1336.04(B)(4) does not apply. We disagree. The language of R.C. 1336.04(B)(4) does not require the creditor to establish he received a judgment based on the lawsuit, but only that the transfer was made after the debtor had been sued or threatened with suit. Langaa and Liedtke established they had claims pending against Jean Pauer at the time she made the transfers.
 {¶ 44} As we discussed above, the record establishes that the transfer rendered Jean Pauer insolvent.
 {¶ 45} R.C. 1336.04(B) sets forth eleven "badges of fraud" to establish the intent of the debtor. With respect to these badges of fraud, Langaa and Liedtke established the transfer was made to an insider; Jean Pauer retained possession and control of the property after the transfer; Jean Pauer had been sued before the transfer; the transfer constituted substantially all of Jean Pauer's assets; no consideration was received for the transfer; Jean Pauer became insolvent as a result of the transfer; and the transfer occurred shortly before or after Jean Pauer incurred a substantial debt. Thus, Langaa and Liedtke established seven badges of fraud.
 {¶ 46} "If the party alleging fraud is able to demonstrate a sufficient number of badges, the burden of proof then shifts to defendant to prove that the transfer was not fraudulent." Baker Sons Equip. Co.v. GSO Equip. Leasing, Inc. (1993), 87 Ohio App.3d 644, 650, citingCardiovascular Thoracic Surgery of Canton, Inc. v. DiMazzio (1987),37 Ohio App.3d 162, 166. Here, Langaa and Liedtke proved an overwhelming number of badges of fraud (seven of the ten applicable to this case); thus, the burden shifted to Jean Pauer to rebut this evidence. Janelle argues Jean Pauer presented evidence to establish she transferred the property to Janelle to disinherit her other daughter; however, the trial court found this evidence unpersuasive. We agree.
 {¶ 47} Janelle next argues that the conveyances at issue were not fraudulent under R.C. 1336.05.
 {¶ 48} R.C. 1336.05 provides:
 {¶ 49} "(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
 {¶ 50} "(B) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."
 {¶ 51} Janelle argues these sections apply only to creditors with pre-existing claims. However, Janelle fails to recognize the distinction between a "claim" and a "judgment." R.C. 1336.01(C) defines a "claim" as, "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." A "creditor" is "a person who has a claim. R.C. 1336.01(D). The Ohio Supreme Court has held that, "An individual possessing a cause of action in tort is a `creditor' within the meaning of R.C. 1336.01(C) and has the right to question an alleged fraudulent conveyance." Steinv. Brown (1985), 18 Ohio St.3d 305, at paragraph one of the syllabus. There is no logical reason why a different rule should apply to one who alleges a cause of action based on frivolous conduct.
 {¶ 52} Here, Langaa and Liedtke's claims arose before the conveyances even though they did not obtain a judgment until after the conveyances. Further, the conveyances were made without consideration, and as we discussed above, rendered Jean Pauer insolvent. Thus, the trial court properly found the conveyances to be fraudulent under R.C. 1336.05(A).
 {¶ 53} After reviewing the record and considering the evidence, we cannot say the trial court's judgment was against the manifest weight of the evidence.
 {¶ 54} Appellant's second assignment of error is without merit.
 {¶ 55} For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas is affirmed.
Ford, P.J., Grendell, J., concur.