JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, ATT, Inc.,[1] appeals a workers compensation verdict in favor of its employee, appellee, Brian Battista. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} This appeal stems from an incident that occurred on October 28, 2003, when Battista injured his back during a work incident. The Industrial Commission of Ohio ("ICO") originally allowed Battista's workers compensation claim for lumbar strain. On October 5, 2005, Battista sought an additional allowance for lumbar disc herniation L4-5, but the ICO denied the claim for the additional condition. On May 16, 2006, Battista appealed the ICO's final order to the common pleas court.
 {¶ 3} On April 18, 2007, a jury trial began. The parties agreed that Battista had a disc herniation at L4-5, and that the sole issue was whether the work incident caused this injury. ATT's expert, Dr. Dean Erickson, testified via video deposition that Battista's disc herniation was not the result of the work incident. At trial, Battista wanted to show a videotape deposition of his expert, Dr. William Musser, a board certified chiropractor; however, ATT's counsel objected to parts of Dr. Musser's testimony.
 {¶ 4} Dr. Musser had been asked if he had an opinion within a reasonable degree of "medical certainty" regarding the cause of Battista's disc herniation at L4-5. *Page 4 
ATT objected the use of the phrase "medical certainty." According to the deposition transcript, the following occurred:
 {¶ 5} "Q: Doctor, I want to ask you a series of opinionquestions. Based on your experience, education, your training, as well as your treatment of Mr. Battista and your review of the MRI films, do you have an opinion within a reasonable degree of chiropracticcertainty as to the cause — or as to what Mr. Battista's diagnosis was? (Emphasis added.)
 {¶ 6} "Mr. Pompeani: Objection.
 {¶ 7} "A: Mr. Battista suffered both a sprain/strain to the lumbar spine and a disc herniation at L4-5.
 {¶ 8} "Q: Okay. And based on your experience, your education, your training, as well as your treatment of Mr. Battista, do you have an opinion within a reasonable degree of medical certainty as to the cause of Mr. Battista's disc herniation at L4-5? (Emphasis added.)
 {¶ 9} "Mr. Pompeani: Objection.
 {¶ 10} "A: I believe it was directly related to the work incident in October of `03."
 {¶ 11} ATT objected on the basis that Dr. Musser is not a medical doctor; therefore, he is not qualified to provide an opinion to a reasonable degree of "medical certainty." Although, the trial court initially sustained the objection, after listening to further arguments on both sides, it ultimately overruled the objection. *Page 5 
The trial court stated, "[i]t is clear that the use of the word `medical' was a slip. That it was unintended." However, in order to err on the side of caution, the trial court instructed the videographer to delete the word "medical" from the tape before the jury heard it. Due to a videographer error, the word "medical" may still have been heard during the tape's playback.[2]
 {¶ 12} In addition to this causation testimony, Dr. Musser testified that he was board certified in chiropractic medicine and has been a chiropractor for 14 years. He stated that he had examined Battista and reviewed all of his medical records. He explained the treatment he had provided Battista for this injury and for a previous injury in 2000.
 {¶ 13} ATT moved for a directed verdict at the end of Battista's case based on the fact that Dr. Musser was not qualified to give a medical opinion and that he did not provide reasons for his opinions. ATT also moved for a directed verdict at the end of the trial for the same reasons and because it asserted that the jury had heard the word "medical" during the tape's playback.[3] The trial court denied both *Page 6 
motions. On April 20, 2007, the jury found in favor of Battista, allowing the additional claim for lumbar disc herniation L4-5.
 {¶ 14} On May 3, 2007, ATT moved for judgment notwithstanding the verdict ("JNOV") or a new trial. On June 18, 2007, the trial court denied that motion. On July 12, 2007, ATT filed a motion to stay execution of judgment and order granting fees and costs, which the trial court denied on July 31, 2007. ATT filed its appeal on July 12, 2007.
 Review and Analysis {¶ 15} ATT brings this appeal, asserting three assignments of error for our review. Because assignments of error I and II are substantially interrelated, we address them together.
 {¶ 16} "I. The trial court erred by permitting claimant's expert, a chiropractor, to state a causation opinion to a reasonable degree of medical certainty.
 {¶ 17} "II. The trial court erred by denying ATT's motion for a directed verdict and motion for judgment notwithstanding the verdict and, alternatively, for a new trial."
 {¶ 18} ATT argues that the trial court erred when it denied its motions for directed verdicts, JNOV, and a new trial. More specifically, it alleges that the trial court erred when it permitted Dr. Musser to state his opinion, without supporting reasons, on causation to a reasonable degree of "medical certainty," and when it *Page 7 
allowed the jury to hear the words "medical certainty." This argument is without merit.
 Directed Verdict and JNOV {¶ 19} "The applicable standard of review for appellate challenges to the overruling of motions for judgment notwithstanding the verdict is identical to that applicable to motions for a directed verdict."McKenney v. Hillside Dairy Co. (Nov. 30, 1995), Cuyahoga App. No. 68392.
 {¶ 20} A motion for a judgment notwithstanding the verdict pursuant to Civ. R. 50(B) tests the legal sufficiency of the evidence. Brooks v.Brost Foundry Co. (May 3, 1991), Cuyahoga App. No. 58065. "`A review of the trial court's denial of appellant's motion for a directed verdict and motion for judgment notwithstanding the verdict requires a preliminary analysis of the components of the action * * *.' Shore,Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10, 13, 531 N.E.2d 333,337." Star Bank Natl. Assn. v. Cirrocumulus Ltd. Partnership (July 17, 1997), Cuyahoga App. Nos. 70918, 70919, citing McKenney v. HillsideDairy Co. (Nov. 30, 1995), Cuyahoga App. No. 68392.
 {¶ 21} Accordingly, the motions test the legal sufficiency of the evidence to go to the jury, and therefore, present a question of law, which we review independently, i.e., de novo, upon appeal. See Grau v.Kleinschmidt (1987), 31 Ohio St.3d 84, 90, 509 N.E.2d 399. "A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to *Page 8 
different conclusions on the essential elements of the claim. [Posin v.A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275,344 N.E.2d 334.] Conversely, the motion should be granted where the evidence is legally insufficient to support the verdict. Id." McLeod v. Mt. SinaiMed. Ctr, 166 Ohio App.3d 647, 2006-Ohio-2206, 852 N.E.2d 1235, at ¶ 41.
 {¶ 22} In Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172,539 N.E.2d 1114, the Ohio Supreme Court held that "the test for granting a directed verdict or a judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmovant."
 {¶ 23} It is well established that, under Evid. R. 104, the introduction of evidence at trial falls within the sound discretion of the trial court. State v. Heinish (1990), 50 Ohio St.3d 231,553 N.E.2d 1026. Therefore, "an appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." State v. Finnerty (1989),45 Ohio St.3d 104, 107, 543 N.E.2d 1233. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 24} Other than Dr. Musser's testimony, Battista provided no evidence of causation. An expert witness must be "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of *Page 9 
the testimony." Evid. R. 702(B). ATT contends that Dr. Musser's testimony was inadmissible because it went beyond the scope of his qualifications when he testified as to a "medical certainty." ATT alleges it is entitled to a directed verdict because, without his expert's testimony, Battista failed to prove that the work incident caused his disc herniation.
 {¶ 25} The trial judge ultimately decided that phrasing the question to a "medical certainty" was unintended, but the judge decided to remove the word "medical" from the video before the jury heard it.
 {¶ 26} We note that the parties dispute whether the jury heard "medical certainty," "medical," or no certainty at all; however, it is clear that at least some type of videographer error occurred. We shall address each of ATT's reasons for requesting a directed verdict in turn. *Page 10 
 I. Qualifications of expert to give a medical opinion {¶ 27} In support of its request for a directed verdict or JNOV, ATT first argues that Dr. Musser was not qualified to give a medical opinion. We find this argument unpersuasive because, clearly, the expert was not testifying as a medical doctor. Based upon the context of the series of questioning, we agree with the trial judge that Battista's counsel "slipped" when she stated "medical certainty." In her first question, she told Dr. Musser that she would be asking a series of questions and that he should use his experience, education, training, and treatment of Battista to determine his opinion to a chiropractic certainty; however, in the very next question, she inadvertently said "medical" instead of "chiropractic."
 {¶ 28} Based upon the initial use of the words "chiropractic certainty" by Battista's counsel, we find that it is clear the follow up question was simply poorly phrased. It is unlikely that Dr. Musser provided his opinion based on a "medical certainty" when he knows that he is a chiropractor and that he would be asked a series of questions that he should answer based upon a chiropractic certainty. Further, during his testimony, he used the word "chiropractor" or "chiropractic" at least 14 times. We find that, based upon the totality of Dr. Musser's testimony, it is clear that he was testifying as a chiropractor and that he did not offer his opinion based upon a medical certainty.
 II. Reasons for expert's opinions *Page 11 {¶ 29} In support of its request for a directed verdict or JNOV, ATT also argues that Dr. Musser failed to state reasons for his opinions. A review of the record indicates that this assertion is simply not true. Dr. Musser testified regarding his history as Battista's chiropractor; described tests he performed and treatments he provided; and discussed his review of Battista's medical records. It was on this information that the expert based his opinion.
 III. The jury heard the word "medical" {¶ 30} Finally, ATT argues that it is entitled to a directed verdict or JNOV because the jury heard the word "medical," even though the trial judge instructed the videographer to remove that word. As discussed above, it is not entirely clear exactly what the jury heard; however, what is clear from the record is that the jury heard Dr. Musser testify regarding his training and experience, testify about his doctor-patient history with Battista, and mention the terms "chiropractor" or "chiropractic" at least 14 times. It is difficult to imagine that the jury thought that Dr. Musser was a medical doctor.
 {¶ 31} Further, in Green v. Administrator, Bureau of Workers'Compensation, (Sept. 19, 1991), Carroll App. No. 593, the trial court granted the defendant's motion for a directed verdict because the plaintiff's expert witness, a chiropractor, was asked to state his opinion to "a reasonable degree of medical certainty." The Seventh Appellate District reversed, citing Shackelford v. Cortec, Inc. (Dec. 30, 1982), Fayette App. No. 82-CA-6, stating that "the practice of chiropractic falls within *Page 12 
a general definition of the practice of medicine, albeit a very limited area of such practice." The court went on to state that theShackelford court believed that the prejudicial effect of including the word "medical" did not outweigh the probative value of the chiropractor's opinion. Green, supra.
 {¶ 32} We follow the decisions in Green and Shackelford. The facts inGreen are very similar to the case at bar because the chiropractor was asked to state his opinion to a "medical certainty." We note that, inShackelford, the chiropractor was asked to state his opinion to a chiropractic and medical certainty, which would seemingly distinguish it from this case; however, we find that the reasoning still applies here, particularly where Dr. Musser testified regarding his qualifications and experience as a chiropractor, used the word "chiropractor" numerous times, and laid a foundation by describing his past and current chiropractic treatment of Battista since 2000.
 {¶ 33} Finally, in Brockway v. Finast Supermarkets, Inc. (Mar. 17, 1995), Lake App. No. 94-L-048, the Eleventh Appellate District upheld a trial judge's decision to allow the testimony of chiropractors, which were given to medical certainties. In that case, the trial judge found, "I would expect that since their expertise is chiropractic, that that's the limitation of their opinions." We agree.
 {¶ 34} Given the totality of Dr. Musser's testimony, we expect that the jury would understand the limitation of his opinions; therefore, we find that, because of the totality and thoroughness of Dr. Musser's testimony, any possible alleged *Page 13 
prejudicial effect of using the word "medical" rather than the word "chiropractic" does not outweigh the probative value of the chiropractor's opinion. Accordingly, we find no merit in any of ATT's reasons in support of its motions for a directed verdict or a JNOV.
 Motion for a New Trial {¶ 35} Civ. R. 59(A)(6) provides that a trial court may order a new trial if it is apparent that a verdict is not supported by competent, substantial, and credible evidence. A reviewing court may reverse the trial court's order if the trial court abused its discretion in failing to order a new trial. Antal v. Olde Wohde Products, Inc. (1984),9 Ohio St.3d 144, 145, 459 N.E.2d. 223.
 {¶ 36} The high standard of abuse of discretion defers to the trial court order because the trial court's ruling may require an evaluation of witness credibility that is not apparent from the trial transcript and record. Schlundt v. Wank (Apr. 17, 1997), Cuyahoga App. No. 70978. Therefore, so long as the evidence is supported by substantial competent, credible evidence, the jury verdict is presumed to be correct, and the trial court must refrain from granting a new trial. Id.
 {¶ 37} Under Civ. R. 59, there are several reasons why a trial court may grant a new trial, which include irregularity of proceedings, misconduct of the jury or parties, accident or surprise, excessive or inadequate damages, a judgment not sustained by the weight of the evidence or contrary to law, newly discovered evidence, and error of law. *Page 14 
 {¶ 38} ATT argues that a new trial is warranted because of irregular proceedings, accident or surprise, and judgment against the manifest weight of the evidence. Essentially, the crux of ATT's argument is that it is entitled to a new trial because of the alleged videographer error.
 {¶ 39} We have already addressed this alleged error and have found that, for a variety of reasons, the trial court did not err when it allowed Dr. Musser's testimony. Therefore, we find that ATT has not provided sufficient evidence in support of its motion for a new trial. Accordingly, appellant's first and second assignments of error are overruled.
 Stay of Execution of Judgment {¶ 40} III. The trial court erred by denying ATT's motion to stay execution of judgment and order granting fees and costs."
 {¶ 41} ATT argues that the trial court should have granted its motion to stay execution of judgment and order granting fees and costs; however, on August 10, 2007, ATT filed a motion to stay with this court, which we denied on September 17, 2007. Thereafter, ATT's counsel informed Battista's counsel that a check would be issued. We find, and both parties agree, that based upon these developments, this assignment of error is moot.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and MELODY J. STEWART, J., CONCUR
[1] The original complaint named defendant Ameritech Corporation, which is now known as ATT, Inc. (herein "ATT").
[2] According to ATT, the jury heard the phrase "medical certainty." According to Battista, the jury did not hear the word "medical" or the word "certainty." There is nothing in the record to tell us exactly what the jury heard. Under App. R. 9(C), ATT should have provided this court with an affidavit from one of its representatives or a juror in which the alleged error could have been explained. This would have provided us with a record as to what transpired during the tape's playback. However, we have only the transcript of the deposition testimony, as originally taken.
[3] It was not until the trial ended, which was the day after the video depositions, and a day after its first motion for a directed verdict, that ATT mentioned the alleged videographer error to the court. We also note that ATT never asked for a curative instruction. *Page 1