Defendant-appellant Victoria L. Cireddu (aka Victoria Cross-Cireddu, dob April 3, 1954; wife), pro se, appeals from the divorce decree (with findings of fact and conclusions of law) entered by the trial court on July 8, 1999.[1] See Court Journal Vol. 3417, pages 841-911. For the reasons adduced below, we affirm.[2]
A review of the record on appeal indicates that the parties were married on December 16, 1983, and that two children (to-wit, James Vito Cireddu [dob May 18, 1984] and Nickolas James Cireddu [dob September 21, 1986]) were the issue of the marriage.
The husband first filed for divorce from the wife on November 13, 1996. See Cuyahoga County Common Pleas Court, Domestic Relations Division, Case No. 250678. That action was voluntarily dismissed, without prejudice, on May 29, 1997.
The action sub judice was filed by the husband on August 27, 1997. Husband alleged gross neglect of duty and extreme cruelty and incompatibility on the part of the wife. The wife answered and counterclaimed on November 7, 1997. The wife alleged gross neglect of duty and extreme cruelty on the part of the husband.
At the time of the divorce complaint filing, the parties, jointly or singly, were owners of three parcels of real property. The first parcel was the marital home located at 2552 Sweetwater Drive, Brecksville, Ohio, with a stipulated fair market value of $195,000 (less mortgage balance of $51,000, leaving a net equity of $144,000 at the time of the 1999 divorce decree). The second parcel was a condominium, purchased by husband prior to the marriage in a partnership arrangement (with Granger Properties) and principally used as a rental unit, located at Carriage Hill, Building 7000, Unit 204, Carriage Hill Drive, Brecksville, Ohio, with a fair market value of $65,000 (less a mortgage balance of $27,000, leaving a net equity of $38,000 at the time of the 1999 divorce). The third parcel was a two-family rental home, purchased by the wife prior to the marriage, located at 8301 Bancroft Avenue, Cleveland, Ohio, with a fair market value of $50,000 (less a mortgage balance of $6,000, leaving a net equity of $44,000 at the time of the 1999 divorce). At the time of the divorce, the wife resided in the marital home while the husband resided in the condominium.
The parties were, apart from real estate mortgages, virtually debt free at the time of their separation.
The assets of the marriage, totaling $270,803.00, as found by the trial court through the evidence and testimony produced at the trial, consisted of the following items:
a. Equity in the marital home of $144,000;
 b. Wife's pension in the State Teacher's Retirement System in the amount of $1,692;[3]
c. Stock shares in the amount of $1,945;
 d. Husband's 401K plan in the amount of $62,843, and an Individual Retirement Account in the amount of $18,223;
e. 1991 Dodge Dynasty automobile valued at $1,000;
f. 1993 Buick Century automobile valued at $6,500;
g. 1988 Buick valued at $1,600;
 h. Husband's accumulated unused vacation pay from his employer, valued at $9,000;
 i. Stock shares which were liquidated valued at $14,000; and,
 j. Marital funds used for condominium maintenance from 1994-1997, valued at $10,000.
The personal property of the parties was divided pursuant to the agreement of the parties. See Court's Journal Vol. 3417, pages 857, 887-888.
In the divorce decree, the husband was ordered to quitclaim his interest in the marital home to the wife and hold wife harmless on the original mortgage, and wife to obtain a mortgage securing her debt to husband in the amount of $38,659.07. The division of marital assets are as follows:
To Wife, total $135,401.50
 $84,176 Proceeds from the sale of the marital home (when sold);
 $1,692 State Teacher's Retirement System pension;
$31,421.50 401K;
$9,111.50 Individual Retirement Account;
$1,600 1988 Buick;
$4,500 Husband's unused vacation pay;
$2,900 Stock share liquidation.
To Husband, total $135,401.50
 $59,823.50 Proceeds from the sale of the marital home (when sold or when the wife buys out the husband's interest in the home; less any arrearage in temporary support payments);
$1,945 Stock shares;
$31,421.50 401K;
$9,111.50 Individual Retirement Account;
$6,500 1993 Buick;
$1,000 Dynasty automobile;
$4,500 Husband's unused vacation pay;
 $10,000 Condominium maintenance from marital funds.
In terms of child custody, the trial court ordered shared parenting pursuant to the agreement attached to the divorce decree at Exhibit 2. See Court Journal Vol. 3417, pages 859, 889-902.
In terms of child support, the court calculated such support over three separate periods linked to the wife's anticipated return to the workforce. For the first period, from the date of the divorce decree to June 1, 2000, the court imputed no income to the wife for purposes of child support (except for rental income from her Bancroft rental property in the amount of $4,800 annually). For the second period, from June 1, 2000 to May 31, 2001, the court imputed $15,000 per year in income to the wife for purposes of child support. For the third period, from June 1, 2001 and thereafter, the court imputed $26,000 per year in income to the wife for purposes of child support. Accordingly, for these three time periods, the court ordered the husband to pay child support, as follows:
 For the first period, an annual child support obligation of $15,652.55 (representing a monthly wage order amount of $1,330.47, or $652.19 bi-weekly);
 For the second period, an annual child support obligation of $14,682.95 (representing a monthly wage order amount of $1,248.05, or $611.79 bi-weekly);
 For the third period, an annual child support obligation of $14,112.17 (representing a monthly wage order amount of $1,199.53, or $588.01 bi-weekly).
See Court Journal Vol. 3417, pages 903-911.
With regard to spousal support, the trial court, after discussing the factors relating to its award of support payments, again utilized a series of time periods over, at most, five years. The spousal support award, subject to modification as detailed below in this opinion, reflects the following:
 a. Commencing June 1, 1999 to May 31, 2000 (or until the plaintiff or defendant dies or the defendant remarries or cohabits), $2,000 per month plus 2% processing charge;
 b. From June 1, 2000 to May 31, 2001 (or until the plaintiff or defendant dies or the defendant remarries or cohabits), $1,725 per month plus 2% processing charge;
 c. From June 1, 2001 onward (or until the plaintiff or defendant dies or the defendant remarries or cohabits, or until May 31, 2004, whichever shall occur first), $1,225 per month plus 2% processing charge.
In addition to this award of spousal support, the court addressed a subsequent modification of that award by precluding a change of circumstances having occurred unless wife's annual income is greater than $30,000 and/or husband's annual income falls below $90,000. Also, the court prohibited a future modification upward if husband's annual income exceeds $97,000. See Court's Journal Vol. 3417, 868.
The trial court next addressed the issue of temporary support. The court determined that: (1) from November 1, 1997 to May 31, 1999, husband should have paid child support and spousal support in the amount of $40,378.93; (2) husband had paid $17,583 in support through the Cuyahoga County Support Enforcement Agency (CSEA); (3) husband had paid directly to the wife miscellaneous expenses in the total amount of $1,455. The court subtracted the actual payments in (2) and (3), totaling payments of $19,038, from the amount in (1), leaving a temporary support balance owed by husband in the amount of $21,340.93. The court then credited this balance of $21,340.93 against the approximate amount of $60,000 the wife owed husband from the sale of the marital home; thus, wife owed husband $38,659.07 ($60,000 — $21,340.93 = $38,659.07) from the sale proceeds of the marital home. Next, the court ordered wife to pay the husband $225.00 (7% of $38,649.07) per month in interest on the $38,659.07 owed to husband until such time as the marital home is sold, and modified the spousal support award by crediting husband with that $225.00 monthly amount. See Court's Journal Vol. 3417, pages 868-871. Therefore, husband would owe monthly spousal support payments as follows: (1) from June 1, 1999 to May 31, 2000, $1,810.50 ($2,000 + 2% processing fee — $225.00 = $1,810.50); (2) from June 1, 2000 to May 31, 2001, $1,530 ($1,725 + 2% processing fee — $225.00 = $1,810.50); (3) from June 1, 2001 to the end of the spousal support period, $1,020 ($1,225 + 2% poundage — $225.00 = $1,020). See Court's Journal Vol. 3417, pages 875-876.
The court next addressed the issue of attorney fees. See Court's Journal Vol. 3417, pages 871-873. The court identified a plethora of factors it considered pursuant to R.C. 3105.18 in this award and ordered husband to pay wife reasonable attorneys' fees in the amount of $30,000 (out of a total amount of fees in the amount of $35,680; note — the $2,900 awarded to the wife from the stock share liquidation was paid to wife as attorney fees and was deducted from the $35,680).
The court then addressed the issue of guardian ad litem fees and noted that the amount of $1,687.50 was stipulated by the parties as reasonable and necessary. The court then apportioned this fee amount, 75% ($1,265.62) to be paid by husband, and 25% ($421.88) to be paid by wife.
Finally, husband was to maintain health insurance on the children during their minority, as well as health insurance on the wife until May 24, 2004 (or until wife remarries or she has health insurance available through her employer, whichever occurs first).
The wife's appeal presents twelve assignments of error attacking virtually every determination made by the trial court on a manifest weight of the evidence standard or an abuse of discretion standard, specifically:
 The disposition ordered by the trial court in the matter of Cireddu v. Cireddu contained errors in the application of applying domestic relations law in regards to: property division — determination of separate and marital property — child support * * *; alimony * * *; distributive share of income and distributive property award * * *; financial misconduct * * *; and attorney fee award * * * not awarding them timely prevented full litigation of rights and protection of marital interests. (Revised Code sections omitted.)
Appellant's brief, Preamble to the Law and Argument section, at 31.
In reading the appellant's brief, it is immediately evident that the brief is a hodge podge, at times rambling and incomprehensible, not properly briefed pursuant to applicable appellate rules. See App.R. 16(A). Be that as it may, this court will attempt to resolve the merits of the appeal as best it can, given the tenor of the statement of the assignment of errors at pages 4 through 10 and the very limited law and argument interspersed throughout the appellant's brief.
The first assignment of error, appellant's brief at 11, provides:
 I THE TRIAL COURT ERRED IN NOT MAKING DUE REGARD FOR THE CLOSING REMARKS THAT ILLUSTRATE HOW THE EVIDENCE ILLUSTRATES FINANCIAL MISCONDUCT WHICH WAS DISMISSED AS NOT PROVED BUT THAT THE RECORD IN THE DEFENDANT'S CLOSING ARGUMENTS (pagination #85) LAYS OUT THE SIGNIFICANCE OF THE EXHIBITS INTRODUCED AND ADMITTED INTO THE TRIAL BUT NOT GIVEN DUE REGARD BY THE COURT'S DISPOSITION AND DECREE.
In this assignment, appellant argues generally that the determination of the trial court, relative to alleged financial misconduct by the husband in allegedly secreting marital funds through his mother, was against the manifest weight of the evidence.
In addressing a manifest weight of the evidence argument, we note the following:
 A judgment supported by some competent, credible evidence going to the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Since the trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410-411, 461 N.E.2d 1273, 1276. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Shore, Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10, 531 N.E.2d 333.
Star Bank National Assn. v. Cirrocumulus Ltd. Partnership (Cuyahoga, 1997), 121 Ohio App.3d 731, 743-744; also see Driscoll v. Norprop, Inc.
(Cuyahoga, 1998), 129 Ohio App.3d 757, 763.
In the action sub judice, the testimony and evidence was conflicting on the issue of financial misconduct by the husband. The court was free to judge the credibility of the parties and assess and weigh the evidence offered by the parties. Accordingly, there was some competent and credible evidence upon which the trial court could conclude that financial misconduct (to-wit, secreted marital funds) was not demonstrated.
The first assignment of error is overruled.
The second assignment of error, iterated in appellant's brief at 4-5, provides:
 II THE TRIAL COURT ERRED IN THE DETERMINATION OF THE SEPARATE PROPERTY OF THE CARRIAGE HILL PROPERTY. ABUSE OF DISCRETION UNDER THE DICTATES OF BLAKEMORE V. BLAKEMORE (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140 WHICH DEFINES THAT TERM AS MORE THAN AN ERROR OF LAW OR JUDGMENT; IT IMPLIES THAT THE COURT'S ATTITUDE IS UNREASONABLE, ARBITRARY OR UNCONSCIONABLE. ALL TESTIMONY ON CONDO INDICATES THAT THE PROPERTY RESULTED FROM THE GRANGER PROPERTY WHICH WAS AN ACTIVE PARTNERSHIP INTEREST RUN THROUGHOUT THE MARRIAGE WITH CHANGES IN OWNERSHIP VALUES AND ACTIVE MANAGEMENT PARTICIPATION.
In this assignment, appellant argues that the trial court abused its discretion in determining that the condominium property was not a marital asset, but the separate asset of the husband.
The evidence reflects that the condominium property was purchased in July of 1994 from proceeds (approximately $28,000) generated from the sale of a rental home owned previously by the Granger Properties partnership prior to the marriage of the parties. This rental unit essentially paid for its operation and there was no cash call of the partners; in short, the profits generated by the rental of the home were plowed back into the operation of the rental home and profit for the venture was realized at the time of the sale. The balance of the condominium's purchase price (approximately $27,000) was secured by a mortgage through the husband's mother. The husband testified that he had no involvement with the daily affairs of the partnership property; his role was limited to preparing the annual tax return and financial statements and he received a fee of approximately $150 for that service from the partnership. (Tr. 77-83.) Since there was some competent and credible evidence upon which the court could conclude that the condominium was purchased with the proceeds of a non-marital asset, the weight of the evidence supports the trial court's determination that the condominium was a non-marital asset.
The second assignment of error is overruled.
The third assignment of error, iterated in appellant's brief at 5, provides:
 III THE TRIAL COURT ERRED IN THE AMOUNT OF INCOME OF THE PLAINTIFF ASSESSED AND STIPULATED TO IN TRIAL AS: $100,127 (PAGE 11 TR MAY 26, 1999) THIS AFFECTS CHILD SUPPORT AND ARREARAGE CALCULATIONS AND SPOUSAL SUPPORT IN DECREE EXHIBIT C, #52 PAGE 30.
In this assignment, appellant argues that the court's determination of husband's annual income is against the manifest weight of the evidence. Appellant misconstrues the evidence.
The husband testified that his gross earned income from his employer was $3,627.20 bi-weekly (Tr. 9-10), and that his annual gross salary from the most recent tax year for which a W-2 form was available was $100,127. (Tr. 11.) Husband also testified that the W-2 figure was in excess of $100,000 that year because there were 27 pay periods that year, not the normal 26 pay period; an event which will not repeat. (Tr. 11.) Thus, husband's correct annual gross salary, as found by the trial court, was approximately, and appropriately, $97,000 ($94,307.20 + $2,500 annual bonus = $96,807.20).
The third assignment of error is overruled.
The fourth assignment of error, iterated in appellant's brief at 5-6, provides:
 IV THE TRIAL COURT ERRED IN NOT ACCOUNTING FOR ALL ASSETS OF THE MARRIAGE (UNDISCLOSED QUALIFIED PENSION THROUGH URS GREINER TO PROBABLY VESTS IN 10TH YEAR OF SERVICE FEB 2000, UNDISCLOSED SIGNATORY ACCOUNT, CHILDREN'S ASSETS — STOCKS AND BONDS, CEMETERY PLOTS AND OTHER UNREVEALED ASSETS THAT HE HOLDS AN INTEREST IN) THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR PREJUDICIAL TO THE APPELLANT WHICH AMOUNTED TO AN ABUSE OF DISCRETION IN ALLOWING THE PLAINTIFF NOT TO DISCLOSE THE NATURE OF THIS $123,000 BUSINESS ACCOUNT (EXHIBIT "I" IN THE TRIAL EVIDENCE) BROUGHT UP IN TRIAL BUT NOT REQUIRED TO FULLY DISCLOSE THIS AND ALL OTHER HIDDEN ASSETS OF MARRIAGE. THE COURT ALLOWED THE PLAINTIFF TO ALSO DISSIPATED (SIC) ALL BANK ACCOUNTS LISTED IN PRETRIAL STATEMENT EXHIBIT 1.
In this assignment, appellant essentially argues, without evidentiary support, that the husband used a URS Greiner account at Key Bank (containing $123,900), of which he was a signatory, to hide marital funds. Appellant also argues that the husband did not fully disclose, through discovery (see clerk's pagination numbers 54 and 55, relating to discovery motions by wife to shorten the response time for answers to discovery) all marital assets of which he maintained an interest. Therefore, it is argued, the allegedly inadequate discovery process prevented the court from properly determining the marital assets, rendering the marital asset determination by the court to be against the manifest weight of the evidence. The record simply does not support the allegations presented in this assignment.
The fourth assignment of error is overruled.
The fifth assignment, iterated in appellant's brief at 6, provides:
 V THE TRIAL COURT ERRED IN DETERMINATION OF DEFACTO TERMINATION DATE OF MARRIAGE. THEREBY ALLOWING 401 STOCK PURCHASES OF $9,500 DURING THE PENDENCY OF THE DIVORCE PROCEEDINGS TO BE CONSIDERED SEPARATE PROPERTY OF THE PLAINTIFF.
In this assignment, appellant argues that it was error for the court to conclude that $9,500 of the husband's 401K plan valuation, which was contributed during the pendency of the divorce proceedings, was not a marital asset. See Divorce Decree at 6.
In valuing the assets of the marriage, the court noted that the husband's 401K plan was stipulated by the parties as being worth $72,343. Id. The court then noted:
 However, approximately $9,500.00 was accumulated during the pendency of this divorce action. The marital portion therefore of the husband's 401K is $62,843.00.
At the end of the passage above, the court included explanatory footnote 2, which states:
 While the Court is not selecting a de facto termination date of the marriage for valuation of assets, the Court is ordering a temporary support order during the pendency of this action, and therefore any sums contributed by husband to his 401K during the pendency of this matter would not be a marital asset. (Italicization added.)
In effect, the court gave with one hand to the husband (in declaring the $9,500 401K contributions during the pendency of the divorce action to be a non-marital asset) and took back with the other hand in favor of the wife (in determining husband should have been paying a greater amount of temporary support during the pendency of the action, and taking into consideration the $9,500 when it determined the amount of temporary support owed). We find no prejudice by the court's action.
The fifth assignment of error is overruled.
The sixth assignment, iterated in appellant's brief at 6, provides:
 VI THE TRIAL COURT ERRED IN INCOME IMPUTED TO THE DEFENDANT FROM RENTAL INCOME OF $4,800 FROM SEPARATE PROPERTY PROJECTED FOR NEXT 5 YEARS IN CHILD SUPPORT CALCULATIONS AS WAS IT INACCURATELY USED BY THE REFEREE IN DETERMINATION DURING THE PENDENCY OF THE DIVORCE AND RETROACTIVELY APPLIED TO ARREARAGE CALCULATIONS.
In this assignment, appellant argues that the court's determination that the wife's Bancroft Avenue rental property generated annual income of $4,800 was against the manifest weight of the evidence.
The record indicates that the upper unit alone of the Bancroft Avenue rental property generated monthly rent of $415.00. See wife's pre-trial statement executed by the wife on February 11, 1998, Plaintiff's Exhibit 52. This monthly amount is equivalent to an annual amount of $4,980 ($415.00 x 12 months = $4,980). Based on this competent evidence, we cannot conclude that the court erred in imputing to the wife gross annual income in the amount of $4,800 from her Bancroft Avenue rental property.
The sixth assignment of error is overruled.
The seventh assignment, iterated in appellant's brief at 7, provides:
 VII THE TRIAL COURT ABUSED ITS DISCRETION IN DIVISION OF PROPERTY ORDERED BY FAILING TO ALLOW INTEREST ON VACATION BACK PAY AND ACCOUNT FOR CAPITAL GAINS/ SALES COSTS/ TAX CONSEQUENCES FOR OFFSET TO PLAINTIFF'S MARITAL INTEREST IN RESIDENTIAL PROPERTY. THE ARREARAGE CALCULATION USED TO REDUCE HIS MARITAL INTEREST IN THE SWEETWATER RESIDENCE IS IN ERROR WITH INFORMATION FROM CUYAHOGA SUPPORT ENFORCEMENT AGENCY AS TO AMOUNT HE PAID AND NOT EVEN CONSISTENT WITH THE FIRST YEAR OF ALIMONY AWARDED AS SUSTENANCE AS FAR AS TEMPORARY ALIMONY IS DESIGNATED.
In this assignment, which is devoid of any discussion or argument except for a one-sentence cursory citation to the court's findings (see Divorce Decree at paragraphs 52-53) and a reference to an exhibit detailing husband's actual payments to CSEA, appellant apparently argues that calculation of the amounts paid by the husband, either directly or through CSEA, should have been offset by interest on the vacation pay, and capital gains, sales costs, and tax consequences relative to the sale of the marital residence. The partial record provided does not indicate that these alleged errors were preserved by the wife at trial by a timely objection or a presentation of evidence relating to the alleged offsets. Accordingly, the matter is waived for purposes of appeal. Also, absent an offer of the evidence, an award utilizing same would be pure speculation, and we cannot say that the trial court abused its discretion in not factoring this putative evidence when it fashioned its award.
The seventh assignment of error is overruled.
The eighth assignment, iterated in appellant's brief at 7, provides:
 VIII THE TRIAL COURT SHOULD HAVE NAMED THE CHILDREN AS IRREVOCABLE BENEFICIARY OF HUSBAND'S LIFE INSURANCE POLICY IN ORDER TO SECURE THE PAYMENT OF HUSBAND'S CHILD SUPPORT OBLIGATION.
Appellant provides no argument accompanying this assignment of error except to cite to section number 3107.171(F)(4)-(9) of the Revised Code. The text of that section number is not reproduced and no analysis as to why that section applies is given. Appellant simply cites the section number itself without further explanation or reasoning.
This court can find no section number 3107.171 in the Revised Code. There is R.C. 3107.17, however that section relates to proceedings in cases of adoption, and contains no mention of naming beneficiaries on a life insurance policy; thus, R.C. 3107.17 is irrelevant for purposes of this appeal.
Assuming appellant's citation contained a typographical error, the closest section which arguably applies to a divorce situation is R.C. 3105.171(F), which delineates the factors the court must take into consideration in making a division and/or distribution of marital property. Paragraphs (4)-(9) of this section include the following factors:
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or an interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each person;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
We fail to see the relevance of R.C. 3105.171(F) to the asserted assignment herein.
The eighth assignment of error is overruled.
The ninth assignment, iterated in appellant's brief at 7-8, provides:
 IX STIPULATIONS AS TO EVALUATION OF STOCKS, IRA, 401K, WERE CHANGED WITHOUT EVIDENCE FROM 12/31/98 DATE TO 3/30/99 NOT REFLECTING THE TRUE VALUE OF THESE ASSETS AT THE END OF THE DIVORCE PROCEEDINGS WITH ANY ACCURACY AND THEN THE INCURRED GAIN ON THE 401 STOCK PURCHASES OCCURRING DURING THE PENDENCY OF THE DIVORCE WAS GIVEN TO THE PLAINTIFF.
Appellant provides no argument accompanying this assignment of error except to cite to (Transcript 1 May 26, 1999 by Terri Moroney, RMR-pg 9-12). Appellant simply makes the citation without further explanation or reasoning.
An appellate court is empowered to disregard an assignment of error presented for review due to a lack of briefing by the party presenting that assignment. State v. Watson (1998), 126 Ohio App.3d 316, 321-322, discretionary appeal disallowed in (1998), 82 Ohio St.3d 1413. Proper appellate briefing standards are set forth in App.R. 16(A). This assignment is deemed to be improperly briefed, and hence disregarded, due to the complete lack of argument containing reasons in support of the contention and citations to authority. See App.R. 16(A)(7).
The ninth assignment of error is overruled.
The tenth assignment, iterated in appellant's brief at 8-9, provides:
 X THE TRIAL COURT ERRED IN IMPUTING A SLIDING SCALE OF SUSTENANCE SUPPORT FROM $2000 TO $1750 TO $1225 TO $1225 TO $1225 (SIC) AND IMPUTING INCOME TO THE DEFENDANT (APPELLANT) OF: 0 TO $15,000 TO $26,000 (FOR LAST 3 YEARS). THE TRIAL COURT ALSO ABUSED ITS DISCRETION THAT IS UNREASONABLE, ARBITRARY, OR UNCONSCIONABLE IN APPLYING INTEREST AT A RATE OF 7% RATE ON EQUITY OF MARITAL RESIDENCE TO BE OFFSET AT A RATE OF $225 PER MONTH AGAINST SUPPORT PAYMENTS. THE SUPPORT APPLIED FOR BY THE DEFENDANT ACCORDING TO THE REVISED TO SUPPORT NEEDS REQUESTS $3800 PER MONTH (EXHIBIT R IN TRIAL). THE HUSBAND HAS AN INCOME OF OVER $100,000 WITH ANTICIPATED RAISES WHILE THE WIFE IS WITHOUT EVEN A TEACHING CERTIFICATE (WHICH LAPSED DUE TO INADEQUATE VOCATIONAL REHABILITATIVE SUPPORT AND INADEQUATE TEMPORARY SPOUSAL SUPPORT AWARDED AT THE END OF THE TRIAL.) THE TRIAL COURT ERRED IN DETERMINING CPA CERTIFICATION OBTAINED BY THE DEFENDANT AS HAVING BEEN PAID FOR BY MR. CIREDDU. THIS IS NOT TRUE IN THAT CPA TESTING WAS COMPLETED MAY 1984 AND ALL EDUCATIONAL REQUIREMENTS WERE OBTAINED PREMARITALLY (I.E. BEFORE DECEMBER 1983) (SEE DECREE 45(J) PAGE 25). THE EFFECTS OF LOST LEGAL RETAINERS AND EFFORTS TO UNDERMINE THE INTEGRITY OF THE DEFENDANT DURING THE PENDENCY OF THIS DIVORCE ADVERSELY AFFECTED DEFENDANT'S JOB PROSPECTS. THE TRANSITION FROM HOMEMAKER TO EMPLOYMENT REQUIRES REHABILITATIVE SPOUSAL SUPPORT AFTER 16 YEARS OF BEING OUT OF THE JOB MARKET.
In arguing this assignment, appellant again fails to properly brief the contentions raised in the stated assignment. The principal contention raised in this assignment is that the court erred in determining the amount and duration of support payments by the husband. The argument in the brief accompanying this assignment, see appellant's brief at 34, states the following, in total:
 Assignment of Error X — Affects sliding scale of sustenance support and imputing income to defendant (appellant) to reduce child support. (Collier v. Collier 36 Ohio App.3d 130, 521 N.E.2d 849 (1987) found court abused its discretion in not adequately providing support. This was a marriage of 15 and a half years where the husband had better earning ability and the support award did not meet standard of living, assisting nonworking spouse from homemaker to head of household by helping complete her education; permit her to be at home with son during formative years; and failed to place proper value on husband's earning potential.
These conclusory allegations contained in the appellant's argument, without more, do not rise to the level of proper briefing since they lack a citation to the record, citation to applicable authority, and a discussion with reasoning relating such authority to the contention(s) presented. As stated in State v. Watson, supra, at 321:
 It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. State v. McGuire (Apr. 15, 1996), Preble App. No. CA95-01-001, unreported, at 40, 1996 WL 174609, affirmed (1997), 80 Ohio St.3d 390, 686 N.E.2d 1112. An appellate court is not a performing bear, required to dance to each and every tune played on an appeal. Id., following State v. Lorraine (Feb. 23, 1996), Trumbull App. No. 95-T-5196, unreported, at 9, 1996 WL 207676.
Accordingly, this assignment is disregarded. State v. Watson (1998),126 Ohio App.3d 316, 321-322, discretionary appeal disallowed in (1998),82 Ohio St.3d 1413.
The tenth assignment of error is overruled.
The eleventh assignment, iterated in appellant's brief at 9, provides:
 XI THE COURT ERRED IN IT'S (SIC) DETERMINATION OF ALIMONY AWARD WHICH IS REDUCED OVER A FIVE YEAR PERIOD OF TIME FAILS TO ALLOW THE WIFE TO REMAIN AT HOME WITH HER TEEN AGE SONS DURING FORMATIVE YEARS WHICH CHANGES THE STANDARD OF LIVING OF THE CHILDREN HAD ENJOYED HAD THE DIVORCE NOT OCCURRED. THE COURT ALSO USES MRS. CIREDDU'S INCOME TO BE GREATER THAN $30,000 AND/OR MR. CIREDDU'S INCOME DROPS BELOW $90,000 (IN ADDITION TO CONSIDERING ALL THE FACTORS THAT THE COURT MUST CONSIDER) TO HAVE A CHANGE OF CIRCUMSTANCES SIGNIFICANT TO DEEM MODIFICATION OF SUPPORT (SPOUSAL OR CHILD). THERE WILL BE NO MODIFICATION UPWARD IF MR. CIREDDU'S INCOME GOES ABOVE $97,000. (#47 P AGE 28 OF THE DIVORCE DECREE) THESE PARAMETERS ARE ARBITRARY AND ARE ABUSE OF THE DISCRETION OF THE COURT IN ALLOWING THIS HIGHLY PAID EXECUTIVE TO CONTINUE HIS GROWTH IN SALARY COMPENSATION WITHOUT BENEFITING HIS CHILDREN.
Apart from generally reiterating the stated assignment in the argument relative to the assignment presented, appellant accompanies this reiteration with the following two sentences, which comprises the entire argument of appellant:
 The facts of this case establish that the plaintiff has a much greater ability to contribute to spousal supports to equalize incomes with such a great disparity between parties in this matter than the court determines. The future income and raises of this executive are not given consideration and the sliding down of spousal support and child support in the last years of the minority of the children to support the household, they are accustomed to, is not in the children's best interest or conducive in making a transition from homemaker to employment by defendant (appellant).
Appellant's brief at 29.
This assignment is disregarded for the same reasons as was assignment of error number ten.
The eleventh assignment of error is overruled.
The twelfth, and final assignment, iterated in appellant's brief at 10, provides:
 XII THE TRIAL COURT ERRED IN THE DELAY IN RULING ON CRITICAL MOTIONS WHICH ALLOWED THE PLAINTIFF TO DISREGARD RESTRAINING ORDERS AND TAKE UNFAIR ADVANTAGE OF CONTROLLING A TRIAL TO BE SET 3 TIMES: NOV 11 AND 12; FEB 1, 2, 3, 4, 5; AND MAY 25, 26, 27, JUNE 1, 2. THE DELAYS IN PROVIDING ATTORNEY FEES UNTIL THE END OF THE CASE DISADVANTAGED THE DEFENDANT'S CASE WHICH WAS INEFFECTUALLY MANAGED. (TR2 BY LOIS ZAKELJ RPR 6/2/99 PG. 22 — TESTIMONY OF ATTORNEY FOR DEFENDANT, FLAVIANO ROSATI, BEARS THIS OUT FROM PAGES 29-35) motion 17345 to show cause (noncompliant with separation agreement filed 8/28/98 by def); 2) motion 17346 for attorney fees filed 8/28/98; 3) motion 22136 to shorten time filed 11/4/98; 4) motion 24774 for automobile filed 12/18/98; and 5) motion 25690 to set aside magistrate's order filed 12/21/98 — no pagination # for these motions exist but listed in the 9 pages of case history journal and docketing statement on 8th page FILED 2/4/99 in group repeated 5 times and to be addressed 5/24, 25, 26, 27, 28/99 at 9:00 in ctrm 3 before Jdg Karner. THIS IRREGULARITY IN THE RECORD REFLECTS HOW PREJUDICIAL ERROR AGAINST THE DEFENDANT OCCURRED IN NOT HEARING THESE MOTIONS AND OBJECTIONS TO THE MAGISTRATE'S REPORT WERE NOT AMENDED SO AS TO AFFORD THE DEFENDANT ADEQUATE PROTECTION IN LITIGATING HER CASE. (SEE PAGE 5 AND 6 AS TO DISPOSITION IN DIVORCE DECREE). THE ATTORNEY FEES SHOULD BE AWARDED AS A DISTRIBUTIVE SHARE OF THE MARITAL ASSETS DUE TO THE MISCONDUCT OF THE PLAINTIFF IN PROLONGING THIS LITIGATION. ORC SEC 3105.17.1(1).
The entire argument relative to this assignment provides:
 Assignment of Error XII affects the delaying ruling on critical motions which allowed plaintiff (appellee) to disregard restraining orders and awarding of attorney fees should be a distributive award due to the misconduct of the plaintiff (appellee) and the attorneys in prolonging this litigation and dissipating marital income.
 The trial court did not act in the best interest of the parties to provide adequate compensation for children and spousal support and property division allocation to compensate for financial misconduct of the plaintiff (appellee).
Due to this inadequate briefing of the argument by appellant, this assignment is disregarded for the same reasons as was assignments of error ten and eleven.
The twelfth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
PATRICIA A. BLACKMON, J., and JAMES M. PORTER, J., CONCUR.
 _________________________________ JAMES D. SWEENEY, PRESIDING JUDGE
[1] The wife had taken graduate level courses in business administration and holds a degree as a Certified Public Accountant, but was unemployed at the time of the divorce decree. She had taught for a time in public schools and was certified to teach math, social studies, data processing and business education. The vocational expert, Ms. Barbara Burke, testified that the wife is extremely employable and could be employed within six to twelve months in a lower level accounting position at a starting annual salary of between $24,000 to $28,000.
[2] Plaintiff-appellee James A. Cireddu (dob January 13, 1954, husband) did not file an appellee's brief. Husband is a Certified Public Accountant, and is employed at URS Greiner as an accountant/controller earning, at the time of the divorce decree, approximately $97,000 annually.
[3] In addition to this marital asset, the wife has a stipulated separate asset of approximately $70,000 in the State Teacher's Retirement System pension.