JOURNAL ENTRY AND OPINION
William Vrabel appeals from a net $10,843.26 judgment of the common pleas court entered in favor of Colleen Williams in connection with work he performed for her pursuant to a home remodeling construction contract. At the trial court level, a magistrate awarded Vrabel $3,250.00 on his breach of contract claim and an additional $8,205.00 for services and materials he provided to Williams that were not part of the original contract. The magistrate then awarded Williams $22,298.26 on her counterclaim for credit, reductions, and the cost to repair Vrabel's allegedly incomplete and unworkmanlike performance, resulting in a net judgment in favor of Williams in the amount of $10,843.26.
On appeal, Vrabel challenges the manifest weight of the magistrate's decision, which the trial court adopted, urging that the court should have awarded him $20,784.00 for the extra services and materials he provided to Williams, and also arguing that the court erred in awarding Williams damages on her counterclaim because she did not give him an opportunity to remedy any defects in the construction project. Vrabel further challenges the qualifications of Williams' expert witness. After carefully considering these arguments and reviewing the facts of this case, we reject Vrabel's assignments of error and affirm the judgment of the trial court.
On March 3, 1998, Williams received architectural plans for an addition to her home, located at 343 Arudel Road, in Rocky River. She hired Vrabel, who owns and operates Vrabel Construction Company, a home construction business, to construct this addition. On March 22, 1998, Vrabel provided Williams with an estimate of $73,420.00 to complete the project.
On June 3, 1998, Williams signed a contract agreeing to pay Vrabel $86,250.00 for labor and materials in connection with the home addition. This contract, which Vrabel prepared, stated in part that, Any alteration or deviation from above specifications involving extra costs will be excuted [sic] only upon written orders * * *.
Vrabel told Williams that it would take him approximately three months to complete the project. On June 8, 1998, Vrabel and his employees began work on Williams' home.
On July 9, 1998, Vrabel withdrew $12,000 from an escrow account set up by Williams to pay for the project. On July 20, 1998, Vrabel withdrew another $54,000 from the account, and on September 10, 1998, Vrabel made a third withdrawal of $27,000, for a total of $93,000.
Williams confronted Vrabel for withdrawing more than the contract amount of $86,250. He informed her that there were extras beyond the terms of the contract, but agreed to return $10,000. As such, Williams paid Vrabel $83,000, which is $3,250 less than the contract amount.
Vrabel then continued to work on Williams' home sporadically through November of that year. During the course of this job, Williams requested several alterations to the original plans. Although no written change orders were executed for this work, Williams acknowledges that she had agreed to pay for certain extras, which totaled $8,205.00.
Williams complained to Vrabel on numerous occasions concerning his workmanship during the course of his performance. Many of these issues remained unresolved on December 1, 1998, the last day Vrabel and his crew performed any work at the Williams' home.
Vrabel claims that Williams prevented him from entering his home to complete the final punch list. Williams, on the other hand, claims that she gave Vrabel ample opportunity to complete the work, but that he failed to do so.
On December 2, 1998, Vrabel gave Williams an invoice in the amount of $20,784 for extras he claimed were not part of the original contract.
On December 11, 1998, Rocky River Building Inspector Enrico Bucci performed an inspection of the Williams' home. The home passed inspection, but Bucci found the repairs to be 95% complete.
On January 8, 1999, Vrabel filed a mechanic's lien against Williams in the amount of $26,134.00, and on June 23, 1999, Vrabel attempted to foreclose on this mechanic's lien. Williams filed an answer and counterclaimed for breach of contract, alleging that Vrabel failed to perform his services in a workmanlike manner. Williams subsequently filed an amended answer and an amended counterclaim averring that Vrabel violated the Ohio Consumer Sales Practices Act.
On January 25, 2000, after obtaining leave of court, Vrabel filed an amended complaint adding a claim for unjust enrichment. The court then referred this matter to a magistrate, who heard this matter on November 1, 2000.
On January 8, 2001, the magistrate found in favor of Vrabel in the amount of $3,250.00, the amount Williams still owed under the original contract, and an additional award of $8,205.00 for the extras Williams agreed to pay for; the magistrate next found in favor of Williams on Vrabel's claim for the other disputed extras; the magistrate found in favor of Williams in the amount of $22,298.26 for her breach of contract counterclaim; and the magistrate found in favor of Vrabel on Williams' claim under the Ohio Consumers Sales Practices Act. As such, the magistrate found that the evidence at trial supported a net judgment in favor of Williams and against Vrabel in the amount of $10,843.26.
The parties filed their respective objections to the magistrate's decision, but on March 13, 2001, the court adopted the magistrate's report and entered judgment in conformity with it.
Vrabel now appeals, raising two assignments of error for our review. The first one states:
 I. THE TRIAL COURT COMMITTED SUBSTANTIAL ERROR IN ADOPTING THE MAGISTRATE'S DECISION THAT THE MECHANIC'S LIEN ON APPELLEE'S PROPERTY IS VOID AND UNENFORCEABLE.
Vrabel urges that the court should not have adopted the magistrate's decision because it only awarded him $8,205.00 for the services and materials he provided to Williams beyond the scope of the contract; he maintains that this amount failed to compensate him fully for the extras he provided, which he claims were worth over $20,000.00. Williams asserts that the court awarded the correct amount because Vrabel is only entitled to payment for the extras to which she requested and agreed to pay for; she further contends the court properly found many of the disputed extras were included in the original contract.
In effect, the issue presented here is whether the judgment of the trial court adopting the magistrate's decision in this regard is against the manifest weight of the evidence.
Our court set forth the following standard of review for manifest weight appeals at page 744 in Star Bank National Assn. v. Cirrocumulus Ltd. Partnership (1997), 121 Ohio App.3d 731:
 * * * A judgment supported by some competent, credible evidence going to the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Since the trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Shore Shirley Co. v. Kelley (1988), 40 Ohio App.3d 10, 531 N.E.2d 333.
At trial, Williams conceded that she requested certain extras, and the magistrate found in favor of Vrabel for these items, which totaled $8,205.00. However, Vrabel claims that he provided additional service at Williams' requests, and he is also entitled to damages for these extras under the doctrine of unjust enrichment. However, as Williams points out, we must first determine the scope of the original contract, and whether or not the parties intended to include these extras for the contractual price of $86,250.00.
As the court stated in Graham v. Drydock Coal Co. (1996),76 Ohio St.3d 311, 313-314:
 The purpose of contract construction is to discover and effectuate the intent of the parties. Skivolocki, at paragraph one of the syllabus. The intent of the parties is presumed to reside in the language they chose to use in their agreement. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning. Shifrin v. Forest City Ent., Inc. (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501. Finally, a contract is to be construed against the party who drew it. Cent. Realty Co. v. Clutter (1980), 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515.
Vrabel raises eleven specific items which he claims were not part of the original contract, and which he claims Williams requested; he urges that the court should have awarded him the cost of these extras. He first claims that the original contract never contemplated installation of tile in the basement. However, the magistrate made a finding, supported by the record, that the subcontractor, Richard Burrows, included the installation of tile in the basement in his original quote.
Vrabel also contends that the original contract only covered painting the addition to Williams' house, and did not provide for the painting of the entire interior of the home. The magistrate found:
 * * * The contractor prepared a contract that specifically stated all walls and ceiling to be painted. . . . * * * The homeowner testified that she intended that the entire interior of the house be painted. The homeowner further testified in support of her position that it did not make sense to think that only part of the house interior would be painted given the extensive nature of the renovation and the need to make the connection between the old and new construction. * * * In any event, the plain language of the contract supports the conclusion that the entire interior of the house was to be painted and that the claimed additional cost is not recoverable. If the contractor intended to limit the interior painting then the contractor should have expressly stated that in his contract.
We agree with the magistrate's decision involving the extra cost of painting the entire interior of the house, which is consistent with the evidence. Vrabel did not expressly limit the scope of the painting job when he drafted the contract, and the plain language of the contract and Williams' credible testimony supports the court's interpretation that painting the entire interior of the house is within the scope of the original contract.
Likewise, the court found the cost of additional electrical work, the installation of new oak flooring in the kitchen, the set up desk area, the island and extra cabinets in the kitchen were included in the original contract. The magistrate's decision with regard to these items is supported by competent, credible evidence.
Vrabel also disputes certain costs involving the upstairs bathroom; the magistrate found that Vrabel failed to itemize these extras, and therefore did not properly allocate damages. We have determined that the magistrate correctly decided not to speculate as to the amount of this project. Similarly, the magistrate rejected Vrabel's claim for plumbing extras because he did not properly allocate damages, and also rejected his claim for two ceramic counter tops in the mud room and formica on the closet floor because he failed to provide documentation for these extras. The record supports these decisions.
Vrabel also requested an additional $3,850.00 for the erection of a new basement wall. However, the magistrate awarded Vrabel this amount after Williams conceded to it at trial. Vrabel is not entitled to recover this amount twice.
As for all the disputed extras, we have concluded that there is competent, credible evidence to support the magistrate's findings. Accordingly, the decision of the magistrate is not against the weight of the evidence, and we reject this assignment of error.
 II. THE MAGISTRATE INCORRECTLY CONCLUDED THAT APPELLANT'S SERVICES WERE NOT PERFORMED IN A WORKMANLIKE MANNER.
As counsel is undoubtedly aware, our review is confined to the decision and judgment entered by the trial court, and does not extend to findings made by a magistrate. Hence, our review of this assignment of error is from the perspective that Vrabel challenges the judgment of the court which adopted the allegedly incorrect conclusions of the magistrate.
Vrabel first challenges the qualification, knowledge and experience of John Savetski, Williams' expert witness. Williams asserts that because Vrabel failed to object to Savetski's qualifications at trial, he cannot raise this on appeal. Secondly, Vrabel maintains the magistrate ignored evidence that Williams prevented him from entering her home to complete the punch list to correct any defects and to complete his work. Williams, on the other hand, notes that there is conflicting testimony in this regard, and she argues that this is an issue of credibility reserved for the trier of fact.
Regarding Stavetski's qualifications as a witness, the standard of review is set forth in State v. Baston (1999), 85 Ohio St.3d 418, wherein the court stated at page 423:
 Evid.R. 702(B) addresses the qualifications necessary to accord a witness "expert" status. Under the rule, a witness may qualify as an expert by reason of her knowledge, experience, skill, training, or education. Neither special education or certification is necessary to confer expert status upon a witness. See State v. Boston (1989), 46 Ohio St.3d 108, 119, 545 N.E.2d 1220, 1231-1232. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 191, 616 N.E.2d 909, 915. Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion. State v. Williams (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 148, 446 N.E.2d 444, 448.
The record reflects that Vrabel failed to object to Stavetski's qualifications as an expert during trial, and when a party fails to so object, he waives all but plain error. See, e.g., State v. Hartman (2001), 93 Ohio St.3d 274, 286. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson(1997), 79 Ohio St.3d 116, syllabus. No such exceptional circumstances exist in this case; by failing to object and thereby preserve this issue for appellate review, Vrabel has waived appellate consideration of this issue.
Vrabel also argues that the court ignored his testimony that Williams refused to allow him to perform the punch list, and therefore she is not entitled to the costs to complete these items. Williams claims that she presented evidence showing that she gave Vrabel an opportunity to perform, but that he failed to do so. In effect, Vrabel raises a manifest weight challenge to the magistrate's decision, and we are mandated to follow the standard set forth in our review of the first assignment of error.
The specific concern here is the $22,298.26 judgment in favor of Williams on her counterclaim, which included, $13,521.00 for the cost to repair incomplete and unworkmanlike performance, $1,439.55 for damages to and for use of the homeowner's personal property.
Vrabel's position that Williams did not give him access to her house so he could remedy her complaints is based on his own testimony; however, Williams testified that she gave Vrabel an opportunity to correct these problems in November and in the beginning of December, but that he failed to do so.
The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact. State v. Awan (1986), 22 Ohio St.3d 120, 123. Here, the court adopted the magistrate's recommendation finding Williams' testimony to be more credible than Vrabel's, and because Williams presented competent, credible evidence that she gave Vrabel an opportunity to remedy the defects in the construction project, we are in no position to second guess that decision.
Based on the foregoing, we have concluded that Vrabel has failed to show plain error in the admission of Savetski's expert testimony; further, that the court's decision to adopt the magistrate's decision and award Williams $22,298.26 is not against the manifest weight of the evidence. Accordingly, we reject this assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. and ANN DYKE, J., CONCUR.